419 P.2d 514

**F. P. NIELSON, dba F. P. Nielson and Sons, Appellant,**

v.

**Jack FLASHBERG, Appellee.**

**No. 8101.**

Supreme Court of Arizona.

In Division.

Oct. 27, 1966.

**336**

Rhodes, Killian & Legg, by Joe S. Reynolds, Mesa, for appellant.

Langerman & Begam, by Frank Lewis, Phoenix, for appellee.

McFARLAND, Justice:

F. P. Nielson, dba F. P. Nielson and Sons, hereinafter referred to as defendant, was sued by Jack Flashberg, hereinafter referred to as plaintiff, for fraudulent representations. The jury returned a verdict for plaintiff of $600.00 in actual damages and $5,000 punitive damages. Defendant appeals from the verdict and the amount of damages.

Plaintiff was engaged in the scrap iron business in Mesa, Arizona, at the time this cause of action arose. Scrap metals were purchased by plaintiff from various persons who usually delivered them to plaintiff's place of business in truck or carloads. The purchase price was paid according to weight, and as plaintiff's scale was of limited weighing capacity, large truck loads were sent to be weighed on the scales of defendant, a public weighmaster certified under A.R.S. §§ 44–2141 to 44–2145.

During the latter part of 1959 plaintiff commenced buying scrap metals from one Ramon Garcia, and in 1960 made regular purchases from him. On some thirty-seven occasions Garcia brought scrap metal to plaintiff's yard in a truck and was sent to defendant's public scale to have the truck

weighed while laden, and then again after unloading, so that the weight of the load might be properly determined. Defendant was fully aware of the fact that plaintiff paid his sellers, including Garcia, on a basis of so many dollars per ton, and that plaintiff relied on defendant's weight certificates in determining the price. On each occasion, defendant's sons (who were partners in the business and generally acted in a managerial capacity) or the employees did the actual weighing and gave Garcia a weight certificate. These weight determinations took place over a period dating from December 31, 1959, to August 29, 1960. During this period, no question was raised as to the propriety of defendant's performance of the weighing. Defendant billed plaintiff monthly, sending a statement of the weighing services performed. In late August or early September of 1960, plaintiff became suspicious upon examining defendant's statement for the previous month, inasmuch as it showed Garcia's truck to have exactly the same unladen weight on several successive occasions. Plaintiff then caused one of his employees to accompany Garcia on his next trip to defendant's scales. On that occasion the truck weighed 7300 pounds. The weight certificates from previous occasions had consistently shown the truck to weigh 4620 pounds.

At the trial plaintiff testified on cross-examination that Garcia had explained to him that defendant had not actually weighed the truck again after unloading, but that Garcia merely told defendant's employees or sons the unladen weight and they entered it on the weight certificate, thereby saving themselves the trouble of weighing the truck twice. Garcia admitted to plaintiff that he had given defendant a false weight in order to receive a higher price per load, and in an effort to make recompense, Garcia had made payments to plaintiff of about $300.00 by the time of the trial.

Many of the material portions of plaintiff's allegations were admitted by defendant or his son at the trial. They admitted knowing the nature of plaintiff's business and that plaintiff relied on the weight certificates in computing payments to those from whom he was purchasing scrap. They also admitted there were times when Garcia's truck was not weighed a second time, and there was no way plaintiff could ascertain this fact by looking at the weight certificate.

The complaint sought actual damages of $910.00 and asked punitive damages of $5,000. The jury was instructed they could set off any compensation plaintiff may have received from other sources, and a verdict was returned of $600.00 compensatory and $5000 punitive damages.

Defendant's first assignment of error is predicated upon the trial court's refusal to set aside the verdict and judgment and to enter judgment in accordance with defendant's motion for a directed verdict for the reason that the elements of fraud were not established by clear and convincing proof, or at all.

 We have held there is no actionable fraud without a concurrence of all the elements thereof. The elements of fraud have been established in this court by a long line of decisions. Wilson v. Byrd, 79 Ariz. 302, 288 P.2d 1079; Koen v. Cavanagh, 70 Ariz. 389, 222 P.2d 630; Rice v. Tissaw, 57 Ariz. 230, 112 P.2d 866; Waddell v. White, 56 Ariz. 420, 108 P.2d 565 (rehearing denied 56 Ariz. 525, 109 P.2d 843); Sims Printing Co. v. Kerby, 56 Ariz. 130, 106 P.2d 197; Stewart v. Phoenix National Bank, 49 Ariz. 34, 64 P.2d 101; Law v. Sidney, 47 Ariz. 1, 53 P.2d 64; Mutual Benefit H. & A. Ass'n v. Ferrell, 42 Ariz. 477, 27 P.2d 519; Moore v. Meyers, 31 Ariz. 347, 253 P. 626. As set forth in the case of Moore v. Meyers, supra, (rev. on other grounds), the elements are:

"* * * (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its

falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury. * * *" 31 Ariz. at 354, 253 P. at 628.

With these principles in mind, we proceed to analyze the evidence to determine whether each of the elements are present. The elements which defendant claims were not present were:

■ (1) A representation. Defendant was a public weighmaster authorized and qualified under the provisions of A.R.S. § 44-2141. As authorized by this statute, he issued a certificate purporting to state the laden and unladen weight of the truck. The issuance of this certificate was a representation to plaintiff that defendant had weighed the truck while it was loaded, and again after it was unloaded.

■ (2) Its falsity. In an interrogatory, one of defendant's sons admitted he believed there were occasions when the truck was not actually weighed after unloading. Plaintiff testified on cross-examination, without contradiction, that Garcia had admitted to him that he simply told the unladen weight and that was what was recorded. The evidence that the truck was not weighed after unloading is uncontradicted and certificates which represent that the truck was weighed twice are false.

■ (4) The speaker's knowledge of its falsity or ignorance of its truth. Defendant dishonestly, intentionally and deliberately issued a certificate purporting to show that the truck had been weighed after unloading, when in truth and fact it had not been weighed. The certificate was issued in order that he might collect his fee for this service. It was therefore with a wicked motive to cheat and deceive plaintiff in that regard. In brief, these were the acts which were fraudulent.

■■ (8) The right of plaintiff to rely thereon. The inspection of the scales as provided for in A.R.S. § 44-2122 is for the purpose of protecting the public in ensuring that the certificate issued by a public

weighmaster contains the correct weight. A.R.S. § 44-2145 provides that a public weighmaster who issues a false or fraudulent certificate is guilty of a misdemeanor. It is for this work and responsibility that the public weighmaster charges a fee for his services. Plaintiff, who paid a fee for these services, had a right to rely on the representation of defendant that he had performed the statutory duty imposed upon him by law. There is no question but that the certificates were issued with the intent that they would be relied upon by plaintiff, and plaintiff certainly had a right to rely upon the certificate of the weights, otherwise the object of the law providing for a public bonded weighmaster would be defeated.

■ (9) His injury. Plaintiff's injury was a direct and proximate result of the fraud because it was upon the net weights as evidenced by the weight certificates that the weight of the purchased load was determined and paid for. The evidence shows that for over twenty consecutive weighings the weight was listed as 4,620 pounds, but when it was actually weighed unladen, the truck weighed well over 7,000 pounds. The computed damage due to the discrepancy was approximately $900.00. The jury was properly instructed that they could offset any compensation plaintiff may have received for his losses in computing the compensatory damages. Plaintiff, in his own testimony, admitted that Ramon Garcia had paid him $300.00 in partial recompense for the losses the plaintiff suffered.

Defendant's second and third assignments of error deal with the wrongful refusal of his requested instructions number five and number twelve. Defendant's objection to the refusal of these two instructions was:

"Then as to Defendant's Instructions Number 4, Number 5, Number 6, Number 7, Number 8, Number 9, and as to the entirety of Number 10, as to Number 12 and 13, the defendant stands on these instructions as the correct statement of law as set forth within the instructions themselves."

In the case of Kostolansky v. Lesher, 95 Ariz. 103, 387 P.2d 804, we said:

"Our consideration of the merits of these instructions is foreclosed by defendants' utter lack of compliance with R.Civ.P. 51(a), 16 A.R.S. which states:

" 'No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.'

"See also Bean v. Gorby, 80 Ariz. 25, 292 P.2d 199 (1956); Sibley v. Jeffreys, 76 Ariz. 340, 264 P.2d 831 (1953). No objections whatever were raised when the court modified defendants' requested instructions 5 and 8. Complaint was made of plaintiffs' requested instruction 6 'for the reason that it is not a correct statement of law.' This in nowise constitutes a 'distinct statement' of grounds for objecting and has, by this court, been held insufficient. See Schmerfeld v. Hendry, 74 Ariz. 159, 245 P.2d 420 (1952). Objections to plaintiffs' instruction number 15 and to the rejection of defendants' instructions 7 and 9 likewise failed to apprise the court distinctly of the objectionable matter and the grounds relied upon, thus falling far short of the standards imposed by Rule 51(a)." 95 Ariz. at 105, 387 P.2d at 806.

■■■ The purpose of this rule requiring distinct statements as to the matters objected to is so that the court may not be led into involuntary error. City of Tucson v. Koerber, 82 Ariz. 347, 313 P.2d 411. Defendant's objection does not meet the standards required for this court to consider such alleged error on appeal.

■■■ Defendant's assignments of error numbers 4 and 5 are that the court erred in granting judgment on the verdict of $600.00 compensatory and $5000 punitive damages for the reason that the punitive damages are disproportionate to the actual damages and that the award of punitive damages must have been the result of passion and prejudice. The giving of punitive damages in itself was not objected to in the trial court, nor is it assigned as error on this appeal. There was no objection to the court's instructions on punitive damages and defendant submitted his own proposed instructions on this issue. Under Rule 51(a), supra, the trial court must be given an opportunity to rule on the law before any of its actions may be sustained as error on appeal.

In a very similar case, Williams v. Bone, 74 Idaho 185, 259 P.2d 810, appellant contended on appeal that punitive damages should not have been awarded, but had failed to object in the lower court, and also failed to assign it as error. The Idaho court therein stated:

" * * * The court instructed the jury on exemplary damages to which defendant took no exception. The instructions so given are not assigned as error, and as a matter of fact, defendant asked instructions covering the issue as to exemplary damages, which were in substance given by the court. No error is assigned as to the applicability of such instructions.

"The objection defendant made to the allowance of exemplary damages and the insufficiency of the evidence to sustain it is only submitted in general terms. If the law of the case as given the jury by the court was not applicable, by failure to object or assign it as error, or submit instructions which defendant contends applicable, such matter has been waived. Where the evidence is conflicting, and where it may be said that if one theory of the case is correct there may be ground for the imposition of exemplary damages, the matter is properly submitted to the jury in order that it may be determined whether or not one theory is true or the other." 74 Idaho at 189, 259 P.2d at 812.

■■■ Defendant next contends that the amount of the punitive damages was unreasonable and was the result of passion and prejudice. The attention of this court

has not been directed to any portion of the proceedings below which may have improperly resulted in the jury's passion or prejudice. Therefore, if such exists, it must be determined from the amount of the award considered in relation to the conduct of the parties as shown by the evidence. In Lutfy v. R. D. Roper & Sons Motor Co., 57 Ariz. 495, 115 P.2d 161, this court held:

"* * * punitive damages should not be allowed, unless the conduct of the wrongdoer is wanton, reckless or shows spite or ill will. * * *" 57 Ariz. at 504, 115 P.2d at 165.

The act of defendant was a gross and wanton disregard of his statutory duty to weigh and issue correct certificates of weight. Punitive damages are not to compensate plaintiff for the loss sustained, but rather to punish defendant for his conduct. Such damages are applicable where there is a "reckless indifference to the interests of others." McNelis v. Bruce, 90 Ariz. 261, 367 P.2d 625; Restatement of the Law, Torts, § 908, Comment b. Defendant's indifference was amply brought out by his own testimony at the trial.

"Q You just didn't care about Mr. Flashberg, did you?

"A We don't. No. We didn't care whether he lost money or made money on it. We was, all we were doing [was] our weighing."

There was evidence to the effect that defendant was a man of some means and his wealth may properly be taken into consideration in assessing the degree of punishment. Restatement of the Law, Torts, § 908, Comment e. Kirven v. Kirven, 162 S.C. 162, 160 S.E. 432; Dutro v. Castoro, 16 Cal.App.2d 116, 60 P.2d 182; Suzore v. Rutherford, 35 Tenn.App. 678, 251 S.W.2d 129.

The amount of an award for punitive damages being a matter of discretion of the trier of fact, such award will not be disturbed unless it is so unreasonable in regard to the circumstances of the case as to show the influence of passion or prejudice. We do not find the award here to have been so unreasonable nor so disproportionate to the actual damages as to warrant the granting of a new trial.

Judgment affirmed.

STRUCKMEYER, C. J., and BERNSTEIN, V. C. J., concur.