494 P.2d 718

Richard L. KING, Appellant-Cross Appellee,

v.

O'RIELLY MOTOR COMPANY, a domestic corporation, et al., Appellees-Cross Appellants.

No. 2 CA–CIV 1071.

Court of Appeals of Arizona, Division 2.

March 14, 1972.

Rehearing Denied April 5, 1972.

Review Denied May 2, 1972.

Messing, Hirsh & Franklin by William Messing, Tucson, for appellant-cross appellee.

Robertson, Molloy, Fickett & Jones, P. C. by Michael J. Meehan, Alan Silverman and John F. Molloy, Tucson, for appellees-cross appellants.

HOWARD, Judge.

Plaintiff, Richard L. King, brought an action in the Superior Court of Pima County against O'Rielly Motor Company, Dave Griffith, Sid Sutton and General Motors Corporation alleging breach of warranty and fraudulent misrepresentation against O'Rielly, Griffith and Sutton and breach of warranty and negligent entrustment against General Motors arising out of the purchase, by King, of a 1968 Chevrolet automobile from O'Rielly Motors. The plaintiff also alleged an agency relationship between O'Rielly and General Motors. Following the return of a jury verdict in favor of plaintiff in the sum of $5,000 against General Motors for compensatory damages and against O'Rielly, Sutton and Griffith in the sum of $1,350 compensatory and $10,000 punitive damages, defendants moved for judgment N.O.V. or, in the alternative, a new trial. The trial court denied defendants' motions for judgment N.O.V. and granted a new trial to both defendants. Plaintiff appeals the order granting a new trial and defendants appeal the denial of judgment N.O.V.

A brief review of the facts of this case reveals that in early October, 1968, King received an invitation from Sid Sutton, a salesman at O'Rielly Chevrolet, to come out to O'Rielly and take a look at the new 1969 Chevrolets which had just arrived. King went to see Mr. Sutton and, after looking at several cars, decided to purchase a 1968 Chevrolet "demonstrator" which was represented to be "as good as new", "in perfect condition", and "in fact, a new car." The purchase agreement signed by King indicated that the car was "new" even though the car's odometer read approximately 7,500 miles. Mr. Dave Griffith, the O'Rielly salesman to whom the car had been assigned as a demonstrator, also helped with the sale and, according to King, stated that the only trouble he had had with the car was a slight problem with the radio antenna. Because the car had been a demonstrator King received the standard "new car warranty" from General Motors.

About a year after he purchased the car King noticed that the paint on the right rear quarter panel was chipping and later discovered that the car, while being driven by Mr. Griffith as a demonstrator, had been involved in an accident which caused damage to the right rear quarter panel. The damage had been repaired by O'Rielly's body shop. Plaintiff then commenced this action.

The order from which all parties appeal, stated:

"This matter having been taken under advisement,

IT IS ORDERED as follows:

1. That the motions of the defendants for Judgment Notwithstanding the Verdict are denied; and

2. That the motions of the defendants for a new trial are granted for the following reasons:

a. That the verdict was the result of passion or prejudice.

b. That the verdict was not justified by the evidence.

To be more specific, there was evidence at the trial that the plaintiff had been damaged in the sum of $1,500.00 because of the actions of the defendants; yet the jury brought in a verdict of compensatory damages in the amount of $1,350.00 against O'Rielly Motor Company and the amount of $5,000.00 against General Motors Company, making a total of $6,350.00. It is therefore evident to the Court that the jury was actuated by passion and prejudice and that the verdict is against the weight of the evidence as heretofore set forth;

IT IS THEREFORE ORDERED that the Motions for a New Trial be and the same are hereby granted."

■ In Arizona, as elsewhere, it is generally true that a trial judge has considerable latitude in awarding a new trial, and except in cases where his discretion is clearly abused an appellate court will not overturn his action. Estabrook v. J. C. Penney Co., 105 Ariz. 302, 464 P.2d 325 (1970). However, our Supreme Court has qualified the above rule by holding that where the trial court does not specify with particularity the grounds for ordering a new trial, the reviewing court will presume that the jury verdict was correct, placing the burden on the appellee to convince the reviewing court that the trial court did not err in ordering a new trial. Santanello v. Cooper, 106 Ariz. 262, 475 P.2d 246

(1970); Estabrook v. J. C. Penney Co., supra; Yoo Thun Lim v. Crespin, 100 Ariz. 80, 411 P.2d 809 (1966). In attempting to justify a new trial the appellee may, by designation of cross-questions on appeal, support the award on the basis of error argued in the motion for new trial but not relied on by the court in granting the motion. Santanello v. Cooper, supra.

We will first consider the cross-appeals urging that the denial of judgment N.O.V. by the trial court was improper. Defendants O'Rielly, Griffith and Sutton, hereinafter referred to simply as O'Rielly, maintain that: (1) Judgment should have been entered for O'Rielly on the question of fraud as there was no duty on the part of O'Rielly to disclose the fact that the automobile had been wrecked, (2) judgment should have been entered for O'Rielly because there was no competent evidence of compensatory damages and (3) judgment should have been entered in favor of O'Rielly denying punitive damages as there was no evidence of wanton, reckless conduct, spite or ill will.

## THE DUTY TO DISCLOSE

O'Rielly maintains that the facts of this case bring it within the rule set forth in Restatement of Torts § 551 (1938) which provides:

"§ 551. Liability for Nondisclosure.

(1) One who fails to disclose to another a thing which he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter which he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated

(a) such matters as the other is entitled to know because of a fiduciary or

other similar relation of trust and confidence between them,

(b) any subsequently acquired information which he recognizes as making untrue or misleading a previous representation which when made was true or believed to be so,

(c) the falsity of a misrepresentation which when made was not made for the purpose of its being acted upon if he subsequently ascertains that the other is about to act in reliance upon it in a transaction with him."

O'Rielly argues that since the facts of this case do not bring it within paragraphs (a), (b) or (c) of subsection (2) of the above, it was clearly under no duty to disclose to King the fact that the vehicle had been wrecked and repaired.

While we agree with defendants' contention that § 551, if applicable, would preclude an action for fraud, we do not believe that the facts of this case limit our consideration to the above mentioned section.

It is undisputed that the automobile in question had been wrecked while being driven by Griffith on the premises of O'Rielly Motors; that O'Rielly did the repair work; and that Griffith himself participated in the sale of the car to King. In inducing King to purchase the car both Sutton and Griffith represented the car to be in "like new" condition; that it had been used only as a "demonstrator" and that it was, in fact, a "new car." King also testified that Griffith stated that the only trouble he had ever had with the car was a minor one having to do with the radio antenna. With these facts in mind we feel that a consideration of §§ 529 and 550 of Restatement of Torts (1938) is necessary for the determination of the question at hand.

These sections provide:

"§ 529. Representation Misleading Because Incomplete.

A statement in a business transaction which, while stating the truth so far as it goes, the maker knows or believes to be materially misleading because of his failure to state qualifying matter is a fraudulent misrepresentation.

\* \* \* \* \* \*

§ 550. Liability for Fraudulent Concealment.

One party to a business transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other as though he had stated the nonexistence of the matter which the other was thus prevented from discovering."

Comment a to § 529 provides that "A statement containing a half-truth may be as misleading as a statement wholly false. Thus, a statement which contains only those matters which are favorable and omits all reference to those which are unfavorable is as much a false representation as if all the facts stated were untrue. . . ." Comment b to § 529 states:

"b. Except where the chattel is sold 'as is,' one who offers a chattel for sale on inspection by so doing impliedly asserts that he knows of nothing which makes the appearance of the article deceptive and which cannot be discovered by such an inspection as a purchaser at such a sale should make. In such a case the vendor knows that the buyer will assume that, except for faults discoverable by such inspection, the thing is as it appears to be and is guilty of actionable fraud if he does not disclose a latent defect known to him."

Comment a to § 550 provides that "a defendant is liable for a fraudulent misrepresentation if he paints over and so conceals a defect in a chattel or building which he is endeavoring to sell to the plaintiff and thus induces the plaintiff to purchase it in ignorance of its defective character."

 It is often difficult to distinguish misleading representations and fraudulent concealment from mere nondisclosure and the classification of the act or acts in question must, of course, depend on the facts of each case. We believe that the facts of

this case, as set forth above, are similar to those in Lewis v. Worldwide Imports, Inc., 238 Or. 580, 395 P.2d 922 (1964), and would be supportive of a finding of misleading representation as set forth in Restatement § 529 or fraudulent concealment as set forth in § 550.

## EVIDENCE OF COMPENSATORY DAMAGES

■ O'Rielly contends that plaintiff King did not introduce competent evidence of compensatory damages because: (1) Plaintiff himself was not an expert and therefore should not have been allowed to testify as to the value of the car and (2) plaintiff's expert, Mr. Harbour, could not testify as to the actual value of the car at the time of the sale because he did not inspect the vehicle until approximately one year after the sale. The contention that King should not have been allowed to testify as to the actual value of his automobile was recently answered by our Supreme Court in Acheson v. Shafter, 107 Ariz. 576, 490 P.2d 832 (1971), wherein the court stated:

> "With this contention we cannot agree. It is well-established that an owner may generally estimate the value of his real or personal property and this is true whether he qualifies as an expert or not. Board of Regents etc. v. Cannon, 86 Ariz. 176, 342 P.2d 207 (1959); Town & Country Chrysler Plymouth v. Porter, 11 Ariz.App. 369, 464 P.2d 815 (1970); III Wigmore, Evidence § 716 (3rd ed. 1940). Plaintiff's testimony was both relevant and competent, and was properly submitted to the jury." 490 P.2d at 834.

The transcript reveals that Mr. Harbour, who had been in the business of automobile repair work for thirty years, testified that he had inspected the subject vehicle about one year after King had purchased it. In his opinion the car had been in a wreck and the workmanship as to the repair job "was not up" to the usual standards." While Mr. Harbour did testify that it would take a minimum of $200 to $250 of repair work to properly repair the damage to the car, he never gave an opinion as to the value of the car at the time of the sale or at the time he inspected it. He did, however, indicate that, in his opinion, a poor repair job, as was done here, would greatly reduce the car's value if it were being sold as a "new model."

■ We feel that Mr. Harbour's testimony to the effect that an improperly repaired car would be greatly reduced in value if sold as a new model is within the scope of opinion allowable by an expert in the field of automobile body repair work.

## EVIDENCE OF ACTUAL MALICE

O'Rielly further contends that it was error for the trial court to deny its motion for judgment N.O.V. as to punitive damages as there was no direct evidence that the failure to disclose was wanton, reckless, or showed spite or ill will. To support this position they argue that the only evidence on this point, the testimony of Griffith that he simply forgot about the accident and the testimony of another O'Rielly employee to the effect that had the damage, in their opinion, been serious, they would not have sold the vehicle as a new car, showed good faith on O'Rielly's part.

In considering this argument we must, of course, view the record in the light most favorable to sustaining the verdict and the denial of the motion. Sarwark Motor Sales, Inc. v. Husband, 5 Ariz.App. 304, 426 P.2d 404 (1967). The jury, as the trier of fact, was under no obligation to accept as true testimony offered by defendants regarding malice. They were properly instructed that:

> "If you find that the defendant, O'Rielly Motor Company's conduct was wanton, reckless or showed spite or ill will and that such conduct was the cause of injury to the plaintiff, you may then consider whether there should be awarded in addition to the actual damage to the plaintiff a reasonable amount as and

for exemplary or punitive damages. Punitive damages are not for the purpose of compensating the plaintiff for loss sustained, but rather to punish the defendant for his conduct so as to discourage future conduct of a like type by the defendant and others. Whether to grant punitive damages and if granted the amount is left to your sound discretion, which discretion should be guided by the public purpose of granting punitive damage as I have indicated it to you and to the circumstances of a particular case. Before awarding punitive damages you must be satisfied that there has been actual damage sustained as the result of the wanton conduct of the defendant, O'Rielly Motor Company."

*See* Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966); Sarwark Motor Sales, Inc. v. Husband, supra.

■ In noting that punitive damages were properly awarded in *Sarwark*, where the defendant repeatedly contended that his company did not turn back the mileage on a car, and in Lewis v. Worldwide Imports, Inc., supra, where the defendant sold a previously wrecked car as "a demonstrator in the condition of a new car," we believe that a review of the record herein supports a jury finding that O'Rielly conducted itself with "reckless indifference to the interests of others," Nielson v. Flashberg, supra; McNelis v. Bruce, 90 Ariz. 261, 367 P.2d 625 (1961); and that such conduct is in violation of societal interests to such an extent as to warrant punishment so as to deter further wrongdoing. Acheson v. Shafter, supra; Neilson v. Flashberg, supra; McGill v. Huling Buick Co., 487 P.2d 656 (Or.1971).

### THE GENERAL MOTORS WARRANTY

At the conclusion of the trial the court directed a verdict in favor of General Motors on the issues of negligent entrustment and agency but submitted to the jury the issue of warranty arising out of General Motors' own representations. On this is-

sue the jury returned a verdict against General Motors in the amount of $5,000 for compensatory damages. General Motors appeals the order denying its motion for judgment N.O.V. claiming that the facts do not support a breach of warranty by General Motors under any theory advanced by plaintiff. We agree.

■ While the standard new car warranty issued by General Motors to King clearly did not cover damage of the type herein complained of, King attempted to show that General Motors, through its local and national advertising, had established an implied warranty of merchantability by stating that its Chevrolet automobiles, which could be purchased through authorized dealers, were trouble free and manufactured with a high quality of workmanship. Plaintiff, in urging this position, relies on Ford Motor Co. v. Lonon, 217 Tenn. 400, 398 S.W.2d 240 (1966) and Inglis v. American Motors Corp., 3 Ohio St. 2d 132, 209 N.E.2d 583 (1965). Although it is true that these cases hold that an implied warranty of merchantability may be established by advertising, even though no privity between purchaser and manufacturer exists, such warranty has not been extended to cover damage done to the product after it has left the manufacturer's hands. In both of the above cases there was no evidence to show that the defects complained of were a result of anything other than inferior design or workmanship on the part of the manufacturer. We do not believe that an implied warranty of merchantability established through the manufacturer's advertising should be extended to cover damage or defects caused solely by the dealer.

■ Plaintiff also attempted to show a breach of warranty by General Motors because of the fact that the warranty issued to him was a "Chevrolet New Vehicle Warranty" when in fact he had not received a "new" vehicle. Plaintiff himself testified that he knew he was purchasing a demonstrator with approximately 7,500 miles on it. He cannot now maintain that

he was misled into believing that he was purchasing a brand new automobile simply because General Motors extends, to purchasers of demonstrators, the same warranty as to purchasers of new vehicles.

ᵞ A careful reading of the record convinces us that plaintiff failed to present any evidence which would support a finding that the sale, by O'Rielly, of an automobile which had been damaged while in O'Rielly's possession, constituted a breach of warranty by General Motors. We therefore hold that the motion for judgment N.O.V. should have been granted to General Motors.

## ORDER GRANTING NEW TRIAL

The trial court's order granting a new trial, set forth above, indicates that the court combined the compensatory damages awarded against O'Rielly ($1,350) with those awarded against General Motors ($5,000) to come up with a total of $6,350 in compensatory damages. As the evidence indicated that plaintiff had been damaged no more than $1,500 the trial judge reasoned that the verdict was not justified by the evidence and was, therefore, actuated by passion or prejudice.

It should be noted that this problem arose partially because the jury was not given a form of verdict whereby it could assess compensatory damages in one amount against both O'Rielly and General Motors. Instead it was given one form by which it could assess compensatory damages against General Motors and one form by which it could assess both compensatory and punitive damages against O'Rielly. Furthermore the jury was not instructed that the total award for compensatory damages could not exceed the actual damages suffered by the plaintiff.

Plaintiff contends that, although the jury verdict against General Motors was admittedly excessive, the trial judge should have considered the verdicts separately, and, since the verdict against O'Rielly was within the evidence, should have granted a new trial only to General Motors. He further argues that the trial judge, in setting forth his reasons for granting a new trial, did not do so with the specificity required by Ariz.R.Civ.P. 59(m), 16 A.R.S. *See* Santanello v. Cooper, supra; Smith v. Tang, 100 Ariz. 196, 412 P.2d 697 (1966). We are unable to agree with either contention.

■ As we have previously stated, we will not overturn the awarding of a new trial by the trial judge unless there has been a clear abuse of discretion. Estabrook v. J. C. Penney Co., supra. Here the verdict against General Motors was clearly excessive and could not be supported by the evidence. We are not in a position to say that the obvious prejudice against General Motors in the awarding of compensatory damages of $5,000 was not also reflected in the award against O'Rielly for a total of $11,350. Nor can we say that the prejudice exhibited is no longer relevant because of our holding that General Motors should have been awarded judgment N.O.V. The trial court had sufficient evidence upon which to find that the jury was motivated by passion or prejudice and we will not disturb his ruling.

■ Plaintiff also contends that a new trial, if granted, should be restricted to the issue of damages. It is the rule in Arizona that the limiting of a new trial to part of the issues lies within the sound discretion of the trial judge and a party may not demand, as a right, that the new trial be so restricted. In re Estate of Thompson, 1 Ariz.App. 18, 398 P.2d 926 (1965). We see no reason why the rule should not be followed in the instant case.

In light of our discussion above concerning liability on the part of O'Rielly and our affirmance of the order granting a new trial to O'Rielly, we need not discuss O'Reilly's cross-questions on appeal dealing with jury instructions and prejudicial conduct on the part of plaintiff's attorney.

Affirmed in part, reversed in part.

KRUCKER, C. J., and HATHAWAY, J., concur.