505 P.2d 1039

**MADISONS CHEVROLET, INC., Appellant,**

v.

**Mary E. DONALD, Appellee.**

**No. 10756.**

Supreme Court of Arizona,
In Division.

Feb. 1, 1973.

Rehearing Denied Feb. 27, 1973.

Bellamak, Mitchell & Shumway, by Ferris W. Bellamak, Scottsdale, for appellant.

Stidham & Galusha, by Charles C. Stidham, Phoenix, for appellee.

CAMERON, Vice Chief Justice.

This is an appeal from a jury verdict and judgment in favor of the plaintiff, Mary E. Donald, against defendant Madisons Chevrolet, Inc., in the amount of $200 actual damages and $7,000 punitive damages and from an order denying defendant's motion for judgment notwithstanding the verdict and granting of a new trial on the issue of damages only.

We are called upon to determine:

1. whether the evidence presented was sufficient to find that the plaintiff sustained actual damages;

2. whether the plaintiff adequately plead and proved a cause of action for false and fraudulent misrepresentation;

3. whether the evidence in this case warranted the imposition of punitive damages; and

4. whether the plaintiff is entitled to additional relief on appeal.

The facts necessary for a determination of this matter on appeal are as follows. On 29 November 1968, the plaintiff, Mary Donald, purchased a 1968 Chevrolet automobile from the defendant, Madisons Chevrolet, Inc., for $3,395, trading in a 1961 Falcon station wagon for which she received a credit of $200. Although the automobile purchased was a current model Chevrolet, it was not a new car but an "executive demonstrator," previously unregistered, and driven by sales personnel of the defendant. The sales order dealing with the transaction indicates that the car's odometer registered 8,544 miles at the time of the purchase. The plaintiff, however, testified during direct examination that the mileage indicator showed 2,800 or 3,800 miles at the time of purchase.

Mary Donald dealt with a salesman named John Marshall. She testified that:

"Mr. Marshall had showed me several cars, and I told him that there was no way that I could make the payments on some of the cars, that I was just wanting a good used car such as I had seen them advertise on television, and he said that on this '68 Impala that it was a *new executive demonstrator,* which I think he termed it, and that I could get the payments extended over a longer period of time and that my payments would be smaller and I should be able to manage the payments such as that." (Emphasis added)

A few weeks after the transaction, the automobile purchased by the plaintiff was struck by another vehicle while it was parked. While the automobile was being repaired, the plaintiff learned that her automobile had been in a previous accident involving the front portion of the car. The repairman who observed the damage testified as follows regarding the damage:

"A That the car had had extensive damage on the front end. I told her it must have been anywhere from $1,000 to $1,200, something like that, all depending whether they had—you know, I couldn't tell

exactly, but that it had extensive damage.

"Q All right, sir, when you say 'extensive damage', what did you physically observe of the vehicle that had been damaged?

"A It was all the front end parts, the fenders and hood and grill and bumper and stuff had all been replaced."

Mr. Gray Madison, President of Madisons Chevrolet, testified that the automobile had been stolen and damaged by the thief but that it had been repaired in the Madisons Chevrolet repair facility.

The defendant moved for directed verdict at the close of all of the evidence. The matter was submitted to the jury and they returned a verdict in favor of the plaintiff for $200 actual damages and $7,000 punitive damages. The defendant moved for judgment notwithstanding the verdict or in the alternative a motion for new trial. The trial court denied the motion for judgment notwithstanding the verdict, but granted a new trial on damages only if the plaintiff failed to accept a remittitur of the judgment to $200 actual damages and $2,000 punitive damages.

The plaintiff refused to accept the remittitur and filed notice of appeal from the order granting the remittitur or new trial and the defendant filed a cross-appeal from the judgment and the order denying the motion for judgment notwithstanding the verdict and the order for a new trial limited to damages only.

The appeal of plaintiff was dismissed on appeal and the cross-appeal of the defendant became the appeal.

## DID THE EVIDENCE SHOW THAT THE PLAINTIFF SUSTAINED ACTUAL DAMAGES?

The defendant contends that there was no competent evidence submitted to the jury proving that the plaintiff had sustained actual damages in connection with the purchase of the automobile, and that since proof of actual damages is a predi-

cate to the right to recover exemplary damages, the issue of both actual and exemplary damages should not have been submitted to the jury.

Mike Guida who was in the business of buying and selling automobiles testified:

"Q [COUNSEL FOR PLAINTIFF]: In view of Exhibits 3 and 4 and 1 that you have in front of you, are you able at this point to say whether or not this particular vehicle—not whether or not—but are you able to say to what extent this particular vehicle was reduced in value by the mere fact that it had been damaged to the extent that it required $1,100 worth of repairs?

*    *    *    *    *    *

"THE WITNESS: I would say just taking a figure here, if I had known, had personal knowledge of this automobile being wrecked, and just with the knowledge of it being wrecked, I would valuate the car in the area, a current year model, somewhere between $200 and $300 less, even though it had been repaired."

Defendant, Madisons Chevrolet, argues that the testimony of Mike Guida taken with other evidence does not in itself conclusively show that Mrs. Donald was damaged $200 or $300. Defendant suggests that the only reasonable conclusion is that if the executive demonstrator had not been wrecked and repaired, it would have cost more than was charged, and that the price actually charged takes into account the fact that the car had been wrecked and repaired. We do not agree.

■■■■ An owner is qualified to testify on the value of his or her automobile. See Acheson v. Shafter, 107 Ariz. 576, 490 P. 2d 832 (1971). The testimony of Mrs. Donald and Mike Guida, coupled with the common knowledge that an extensively damaged automobile is of less value than an undamaged automobile, is sufficient to establish the existence of damage. Al-

though some uncertainty may exist as to the exact amount, we do not think it was error to submit the case to the jury. We have stated:

" 'It is true that there was uncertainty as to the extent of the damage, but there was none as to the fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage, and the measure of proof necessary to enable the jury to fix the amount. The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount.' [Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 250, 75 L.Ed. 544.]

"This distinction is fundamental for where, as here, it clearly appears that a party has suffered damage, a more liberal rule should be applied in allowing the court or jury to determine the amount of the damage than should be applied in weighing evidence on the question of whether or not the acts complained of will result in any damage at all to the party upon whom rests the burden of proof." Jacob v. Miner, 67 Ariz. 109, 116, 191 P.2d 734, 738, 739 (1948).

We are of the opinion that the evidence in this case fully established by competent evidence the fact that plaintiff was damaged and it was proper for the jury to decide the amount.

## DID THE PLAINTIFF ADEQUATELY PLEAD AND PROVE A CAUSE OF ACTION FOR FALSE AND FRAUDULENT MISREPRESENTATION?

■■■■ Defendant suggests that plaintiff at most had an action for fraudulent concealment and that because this theory was not plead or proved, plaintiff must fail. Defendant is correct that concealment and

misrepresentation are separate causes of action. We have stated:

"Of course, it is correct that misrepresentation and concealment both may constitute actionable fraud, and in some cases may factually be but two sides of the same legal coin. Where failure to disclose a material fact is calculated to induce a false belief, the distinction between concealment and affirmative misrepresentation is tenuous. Both are fraudulent. However, mere failure to disclose a fact, although it may be fraudulent, is not equivalent to affirmation of the contrary fact. See Dash v. Jennings, 272 App.Div. 1073, 74 N.Y.S.2d 881 (1947)." Schock v. Jacka, 105 Ariz. 131, 133, 460 P.2d 185, 187 (1969).

Defendant argues that since there was no evidence to show that the defendant or its salesman deliberately concealed the fact that the car had been damaged and repaired, the actions of the salesman toward Mrs. Donald are therefore in the nature of a mere nondisclosure and not a fraudulent misrepresentation. We do not agree. The 9 elements of fraud required by this court, Moore v. Meyers, 31 Ariz. 347, 253 P. 626 (1927), have been satisfied, and while we would have no difficulty in affirming a judgment based upon fraudulent concealment, we believe that an action for fraudulent misrepresentation can also be maintained.

The automobile in question was represented to Mrs. Donald as a "new executive demonstrator." Although defendant claims this is merely puffery, a "new" executive demonstrator is something quite different than a "wrecked" executive demonstrator. King v. O'Reilly Motor Company, 16 Ariz. App. 518, 494 P.2d 718 (1972).

## DID THE EVIDENCE WARRANT THE IMPOSITION OF PUNITIVE DAMAGES?

Finally, the defendant contends that the record does not contain evidence sufficient to warrant the imposition of punitive damages, suggesting that the verdict of the jury was motivated by prejudice against automobile dealers. We do not agree. The failure of defendant to inform the plaintiff that the automobile had been previously wrecked was a "reckless indifference" to the rights and safety of Mrs. Donald or any other prospective buyer. We have said:

"Punitive damages are not to compensate plaintiff for the loss sustained, but rather to punish defendant for his conduct. Such damages are applicable where there is a 'reckless indifference to the interest of others.' McNelis v. Bruce, 90 Ariz. 261, 367 P.2d 625; Restatement of the Law, Torts, § 908, Comment b." Nielson v. Flashberg, 101 Ariz. 335, 341, 419 P. 2d 514, 520 (1966).

This question was settled by our Court of Appeals in a remarkably similar case in which a purchaser of a "demonstrator," represented to be "as good as new" by the salesman, found out a year later that the car had been involved in an accident. The Court of Appeals stated:

"In noting that punitive damages were properly awarded in Sarwark, [Sarwark Motor Sales, Inc. v. Husband, 5 Ariz. App. 304, 426 P.2d 404] where the defendant repeatedly contended that his company did not turn back the mileage on a car, and in Lewis v. Worldwide Imports, Inc., [238 Or. 580, 395 P.2d 922] supra, where the defendant sold a previously wrecked car as 'a demonstrator in the condition of a new car,' we believe that a review of the record herein supports a jury finding that O'Reilly conducted itself with 'reckless indifference to the interests of others,' Nielson v. Flashberg, supra; McNelis v. Bruce, 90 Ariz. 261, 367 P.2d 625 (1961); and that such conduct is in violation of societal interests to such an extent as to warrant punishment so as to deter further wrongdoing. (citations omitted)" King v. O'Reilly Motor Company, supra, 16 Ariz.App. at 523, 494 P.2d at 723.

Often, the function of punitive damages in effect is to legitimate the jury's giving

vent to its sense of outrage at the conduct of the defendant and to relieve it of the sometimes difficult task of quantifying the degree to which the plaintiff has literally been harmed. Further, punitive damages are assessed to deter conduct of a serious antisocial or irresponsible nature, such as exhibited by defendant here. We believe the instructions were correct as to punitive damages.

## IS THE PLAINTIFF ENTITLED TO ADDITIONAL RELIEF?

The plaintiff (appellee) asked in her answering brief that we set aside the order of the trial court granting a new trial as to damages only and affirm on appeal the verdict of the jury. It has been held that an appellate court will consider cross-questions by the appellee when they support the actions of the trial court. City of Kingman v. Havatone, 14 Ariz.App. 585, 485 P.2d 574 (1971). When, however, such cross-assignments seek to set aside the judgment or order appealed from or, as here, seek to enlarge on appeal the relief the appellee seeks, then the party must file an appeal or cross-appeal as the case may be. Maricopa County v. Corporation Commission, 79 Ariz. 307, 289 P.2d 183 (1955); Santanello v. Cooper, 106 Ariz. 262, 475 P.2d 246 (1970).

The order granting the motion for new trial limited to the issue of damages only is affirmed.

STRUCKMEYER, and LOCKWOOD, JJ., concur.