505 P.2d 1074

**STATE of Arizona, Appellee,**

v.

**Edward HAYNIE, Appellant.**

**No. 1 CA–CR 388.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 8, 1973.

Rehearing Denied March 14, 1973.

Review Denied April 17, 1973.

---

Gary K. Nelson, Atty. Gen. by Louis A. Moore, Jr., Phoenix, for appellee.

Edwin R. Powell, Holbrook, for appellant.

JACOBSON, Chief Judge, Division 1.

The defendant Edward Haynie on this appeal of his conviction and sentence for grand theft, questions the sufficiency of the evidence to convict, the allegedly fatally defective nature of the information, and the trial court's instructions.

In February 1970, Edwin Earl Shelly was operating a business known as Sundown Boys Ranch located near Aripine in Navajo County, Arizona. The ranch was not operating during the winter months. On the morning of February 26, 1970, Melvin Brewer, who was a watchman for the property, noticed tire tracks leading into and from the ranch property. These tracks were particularly clear as a storm had occurred in the area two days prior and the tracks appeared to have been made subsequent to the storm. These tracks, which consisted of a distinctive zig-zag tread design, led from the main gate to a "cook shack" located on the premises and back to the main gate and then toward the town of Show Low, Arizona.

Upon investigating, Mr. Brewer found the hasp on the cook shack door to be hanging loose. He summoned a deputy sheriff and Mr. Shelly who ascertained that various items of personal property, consisting of saddles, bridles, a bread mixer, a meat slicer, various Dutch ovens and pots and pans, together with foodstuffs and some mounted deer heads, had been removed from the cook shack.

Two days later, on February 28, 1970, Mr. Shelly was in Phoenix, Arizona, at the parking lot of Greyhound Park where a "Park and Swap" operation was being conducted. While at the "Park and Swap," Mr. Shelly saw three saddles which had been taken from the cook shack. These articles were in the possession of a Mr. Payne, who informed Mr. Shelly that he had purchased them from a Mr. Jarnigan. Mr. Jarnigan advised police detectives, who were summoned, that he had purchased these articles from a "Westly Cluff" and produced a bill of sale bearing this name. Mr. Jarnigan then identified the defendant, Edward Haynie, as the "Westly Cluff" who had signed the bill of sale. Also in possession of the defendant were various Dutch ovens, a meat slicer, a mixer, a milk separator, a mimeograph machine, a large roll of plastic and various pots and pans, all of which were identified by Mr. Shelly as having been removed from his cook shack at the Sundown Boys Ranch.

All of these items were displayed for sale by the defendant in front of an International Travelall vehicle and trailer. The tires on the Travelall vehicle had a distinctive zig-zag tread design. Upon being questioned as to where the defendant had obtained these items, he first stated that he had gotten them at Lakeside, Arizona. He later stated that he had obtained them from a Mr. Miller at Pinetop, Arizona. Still later he stated that he had purchased them from a man at a nearby stall at the "Park and Swap." The defendant, at the time of trial, testified that the stolen articles were obtained by the latter acquisition. The defendant himself testified that he was in the Show Low area on February 24, 25, and 26, 1970.

The defendant was charged by an information in Superior Court of Navajo Coun-

ty which contained a description of the property allegedly stolen as:

"27 used Heiser, Carlock, Roper Mexican-made saddles

"20 used horse bridles

" 9 used Dutch ovens

" 2 used griddles

" 1 used Hobart electric bread mixer, grey in color

" 1 used electric meat slicer

"50 used Melmac plastic dinner plates and assorted used pots and miscellaneous foodstuffs."

During the course of the trial the following examination by the county attorney of a defense witness occurred:

"Q. Mr. McNamara, have you ever been convicted of a felony?

"A. Have been charged with one and dropped to a misdemeanor.

"Q. Been never convicted of a felony? Answer the question.

"A. The way I understood it, sir, I was charged with it and then it was dropped to a misdemeanor is the way I understood it.

"Q. Isn't it true that, in the Superior Court of the State of California in and for the County of Los Angeles, on September 5, 1963, you were convicted of violation of Section 1–10851, grand theft, a felony, under the motor vehicle code?

"A. Yes, sir.

"Q. Your answer is 'yes, sir'."

"[Defense Counsel]: The answer was 'yes, sir'."

No objection was made to this testimony and, although there was a request made that the questions and answers be stricken, it was taken under advisement by the court and the defendant did not renew or request a ruling on this motion.

The trial court, over objection, gave the following instruction:

"The fact that a witness has been convicted of a felony, if such be a fact, may be considered by you only for the purpose of determining the credibility of that witness. The fact of a conviction does not necessarily destroy or impair the witness's credibility. It is one of the circumstances that you may take into consideration in weighing the testimony of the witness."

■ The defendant first raises the issue that the evidence was insufficient to support a conviction of the defendant of the crime of grand theft. Defendant's argument in this regard is basically a jury argument before this court. He argues that defendant's explanation of his possession of the property is reasonable and believable; he questions the ability of Mr. Shelly to identify items found in defendant's possession which bear no distinctive marks; and he questions the identification of the tracks made at the Sundown Boys Ranch as belonging to his Travelall vehicle. As previously indicated, we classify these issues as matters for the jury's consideration which, by its verdict of guilty, has found them all against the defendant.

■ There was evidence presented to the jury that the defendant was in the area of the crime on dates consistent with when the property was stolen, that he owned a vehicle which ran on tires bearing tread marks similar to those found at the scene of the theft, that he was in possession of recently stolen property, that his explanation of that possession was equivocal, and that he had used a fictitious name in disposing of a portion of that stolen property. We hold that this is sufficient to support a conviction. State v. Pederson, 102 Ariz. 60, 424 P.2d 810, cert. denied, 339 U.S. 867, 88 S.Ct. 138, 19 L.Ed.2d 142 (1967); State v. Ruiz, 11 Ariz.App. 205, 463 P.2d 100 (1970).

■ The defendant next attacks the sufficiency of the information on the grounds that the items listed therein are not described with sufficient particularity to state the crime of grand theft of these items. A similar argument, in a grand theft setting, was presented to this court and rejected in

**186**

the case of State v. Mallory, 19 Ariz.App. 15, 504 P.2d 556. (Filed December 21, 1972.) That decision answers all the contentions raised by the defendant, and its reasoning need not be repeated here. We hold that the information was not fatally defective.

■ The third issue raised by the defendant deals with the failure of the trial court to instruct the jury on the issue of petty theft. This argument is bottomed upon the assertion that the testimony of the owner of personal property as to its value is incompetent. This is not the law. It has long been the rule in Arizona that an owner is qualified to testify as to the value of his own personal property. Murphy v. State, 50 Ariz. 481, 73 P.2d 110 (1937); Acheson v. Shafter, 107 Ariz. 576, 490 P. 2d 832 (1971); Madisons Chevrolet, Inc. v. Donald, 109 Ariz. 100, 505 P.2d 1039 (Filed February 1, 1973).

■ The dividing line between petty theft and grand theft is one hundred dollars. A.R.S. § 13–663. Mr. Shelly, the owner of the items stolen, testified that their value far exceeded this one hundred dollars figure. This is the only evidence presented as to value. The trial court is not required to instruct on lesser included offenses where there is no evidence to support the conviction of the lesser offense. State v. Ballinger, 19 Ariz.App. 32, 504 P.2d 955 (Filed January 9, 1973); State v. Dixon, 107 Ariz. 415, 489 P.2d 225 (1971). We find no error in refusing defendant's requested petty theft instruction.

■ The last issue raised by the defendant is the trial court's giving of an instruction on the credibility of a witness who has previously been convicted of a felony. We need not decide in this case whether prejudicial error results in questioning a defense witness as to his conviction of a felony where in fact the crime was treated by the sentencing judge as a misdemeanor, for in this case the county attorney's concluding question to the defense witness was:

"Q. Isn't it true that, in the Superior Court of the State of California in and for the County of Los Angeles, on September 5, 1963, you were convicted of violation of Section 1–10851, grand theft, a felony, under the motor vehicle code?

"A. Yes, sir.

"Q. Your answer is 'yes, sir'?

"[Defense Counsel]: The answer was 'yes, sir'."

At this point, the matter was dropped by both parties. Under this state of the record, the witness having admitted a conviction for a felony, the trial court properly instructed the jury as to the effect of such an admission.

The judgment of conviction and sentence are affirmed.

EUBANK, P. J., and HAIRE, J., concur.