530 P.2d 900

**Aftab AHMED and Louise Ahmed, his wife, Richard Pauk and Sandra Pauk, his wife, dba Ortho Comfort Stores, Appellants,**

**v.**

**Constance Regina COLLINS, Appellee.**

**No. I CA–CIV 2161.**

Court of Appeals of Arizona,
Division 1,
Department C.

Jan. 16, 1975.

Rehearing Denied Feb. 18, 1975.

Review Denied April 8, 1975.

Richmond, Ajamie, Fay & Warner by Amil J. Ajamie, Phoenix, for appellants.

Gerald F. Sullivan, Phoenix, for appellee.

## OPINION

WREN, Judge.

This is an appeal from a judgment and verdict awarding plaintiff $694 in actual damages and $15,000 for punitive damages in an action charging fraud. Plaintiff, Constance Regina Collins (Collins), alleged in her complaint that the defendant, Aftab Ahmed, doing business as Ortho Comfort Stores (Ortho), through his agent-employee, defendant, Richard Pauk (Pauk), misrepresented to her that if she would

make a down payment on a bed, and, subsequently, pay an additional sum to show good faith, Ortho would arrange for the financing of the balance of the purchase price. She further alleged that neither credit nor the bed were ever received. We agree with the verdict of the jury and affirm the judgment of the trial court.

The facts are in sharp dispute. Collins, a quadriplegic, contacted Ortho about purchasing an orthopedic bed. On February 24, 1970, Pauk visited her in her home and quoted a price of $1,366. Collins testified she informed Pauk that it would be difficult for her to purchase on credit since she was unable to work, but that she could not otherwise buy the bed. She further related that Pauk then told her not to worry; that he had handled transactions like this before; and that he stated, in substance, if she would make a down payment of $366, she would receive credit and the bed would be delivered in two weeks. The jury was also informed that she was led to believe that Ortho had finance companies through which it worked.

Pauk denied representing that Ortho would extend credit financing to her. His version of the occurrence was that credit information was obtained from plaintiff, and, that on the basis of that information, he informed her there would be no problem in obtaining financing.

In any event, Collins then signed a bank credit statement and a purchase agreement for the bed, and a few days later, paid the $366. Ortho thereafter attempted to obtain financing for Collins through a bank, which agreed to make the requested loan if she would deposit $1,000 in a savings account as collateral. Ortho relayed this information to Collins, but she refused to make the requisite deposit.

Collins further informed the jury that Pauk later told her an additional $328 would be needed to show his boss and the finance company that she was acting in good faith, and that he would return the money to her in a few days. She agreed, and on March 6, 1970, Pauk came to Collins' home to pick up the check. According to her version of the events, he then repeated that he would return this check in a few days. He also at that time, delivered a small bed which he described as a "loaner" until the large bed she had originally ordered arrived.

Pauk, on the other hand, claimed that the bed was delivered in response to a plea by Collins, and that he delivered it only after informing her that it would have to be paid for on delivery. Further, that $328, along with the $366 previously given, would be needed for the purchase price. He also testified that he told her the $328 would be returned when the loan was approved at the bank, and that Ortho would then retrieve the small bed and deliver the other one; that he then wrote on the original purchase agreement: "Return $328 when loan is approved by bank." This writing appeared, as testified to by Pauk, on the agreement introduced in evidence.

However, according to Collins and her fiance, Carl Newlin, only the words "Return $328" were written by Pauk on the agreement, and that such wording was placed there at the insistence of Collins. When the check was not later returned Pauk was called, and he informed them that he was still working with the finance people, and that both checks were on his desk. Collins subsequently learned that each check had been cashed the same day it was delivered to Pauk. Her demand that the money be returned was refused. According to her testimony she was told by Pauk, "We are even."

Defendants' principal assignment of error is that there was no proof of any misrepresentation legally cognizable as actionable fraud. Specifically, they assert that the alleged representation as to extension of credit related to the performance of a future act, and did not constitute the requisite misrepresentation of a present or existing fact.

To constitute fraud a representation must relate to a present, or preexisting fact, and cannot be based on unfulfilled

promises or statements as to future events. Law v. Sidney, 47 Ariz. 1, 53 P.2d 64 (1936); Denbo v. Badger, 18 Ariz.App. 426, 503 P.2d 384 (1972). The primary reason espoused for the rule is that a promise to perform in the future is not the type of representation that can be shown to be true or false at the time it was made, and therefore, a person has no right to rely thereon. Denbo, *supra*. Promises relating to future events, which are unkept constitute, at most, a breach of contract. Law, *supra*.

■ A well established exception to the above general rule is a promise made without present intention to perform. Starkovich v. Noye, Ariz., 529 P.2d 698 (1974); Waddell v. White, 56 Ariz. 420, 108 P.2d 565 (1940); Berry v. Robotka, 9 Ariz.App. 461, 453 P.2d 972 (1969). In such case, the misstatement of the present intention is regarded as a misrepresentation of fact. Whether such a statement is one of present fact, or one of opinion or promise, must be resolved in light of the circumstances surrounding its utterance. *See* Waddell, *supra;* 37 Am.Jur.2d, Fraud and Deceit § 46 (1968).

■ Clearly there was evidence before the trial court to support defendants' assertion that the claimed representations related solely to the happening of a future event, to wit, the obtaining of credit for plaintiff from a finance company. Just as clearly, however, there was sufficient evidence for the jury to conclude that the representations constituted an affirmation that plaintiff would be given credit by Ortho immediately upon payment of the monies requested. The latter theory was obviously buttressed by Collins' logical statement that she knew she could not obtain financing from a lending agency. We also find sufficient evidence in the record to justify imputation of knowledge to Pauk that Collins could not, within her means, obtain outside commercial credit for the purchase.

Particularly relevant to this point is the evidence relating to alleged alteration of documents by defendants. Aside from the testimony of Collins that wording on the agreement as to return of the $328 was changed, she claimed that certain financial information appearing on the credit form was false, specifically, a monthly take home pay of $500. She testified that she signed the document without reading it after being told it was just "paperwork." Pauk countered, on cross-examination, that Collins had indicated her monthly take home pay to be $500, and that, even though he knew she was not employed, he had not questioned her about the source of her claimed income.

From this evidence a jury could reasonably conclude that the representations of Pauk, which dispelled the doubt in Collins' mind as to the availability of financing, was tantamount to an assertion of fact that, if she would make a down payment of $366, Ortho would extend credit for the balance. In this context, such representation could reasonably be classified as relating to an existing fact.

■ The issue of fraudulent representation was submitted to the jury, and it is not the function of this court to overturn a verdict reasonably supported by evidence. We do not feel constrained to rule that, as a matter of law, Pauk's representation did not relate to a "existing fact" or that Collins was not to "have credit" if she would pay the additional sum. *See* Pacific Gas, etc., Co. v. Almanzo, 22 Ariz. 431, 198 P. 457 (1921); Mobile Oil Company v. Frisbie, 14 Ariz.App. 557, 485 P.2d 280 (1971). The jury could well find from her testimony that she was led to believe Ortho was extending credit to her. This finding is lent credence by the fact that Collins, at that time, handed Pauk a check for $366, and it is further supported by certain captions in Ortho's printed purchase agreement which refer to the terms of financing.

Under the rationale of this opinion, defendants' contention that plaintiff failed to show by clear and convincing proof the falsity of the representations is an untena-

ble one. It is uncontroverted that she did not obtain a deferred payment plan from Ortho at the time she parted with her money.

 Defendants next contend that statements made by plaintiff's counsel in closing argument were not supported by the evidence. No objection on this point was made at the trial and we will not therefore, consider it for the first time on appeal. Tryon v. Naegle, 20 Ariz.App. 138, 510 P.2d 768 (1973). Nor do we find support for their contention that actual damages were not proven. Plaintiff testified that she paid defendants $694, and that no part of such sum was ever returned. That alone is sufficient proof of her monetary loss.

The final charge of defendants is that the award of punitive damages cannot be justified; and further, that the method by which the jury was allowed to assess such damages was unconstitutional. This court again notes, however, that the instructions on punitive damages were not objected to in the trial court and defendants cannot now complain. Rule 51(a), Rules of Civil Procedure, 16 A.R.S.; Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966). On this same point they further argue that since no evidence was proffered regarding their wealth, the jury had no criterion upon which to base the amount assessed, and therefore must have been motivated solely by passion and sympathy for plaintiff's physical condition. Again we disagree. The wealth of a defendant is only *one* factor which a jury may consider in assessing punitive damages. Dodge City Motors, Inc. v. Rogers, 16 Ariz.App. 24, 490 P.2d 853 (1971). Nor is it an essential factor. Fletcher v. Western National Life Insurance Co., 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970); Aaron v. Rinalidi, 296 So.2d 632 (Fla.App.1974); Powers v. Sturm, 12 Ill.App.3d 346, 297 N.E.2d 628 (1973). Moreover, the amount of the punitive award does not require us to find that it was the result of passion or prejudice. Punitive damages are not to compensate for a loss, but rather to punish for misconduct, and it must, therefore be a matter of discretion for the trier of fact. Madison Chevrolet, Inc. v. Donald, 109 Ariz. 100, 505 P.2d 1039 (1972); Nielson, *supra.* Such award will not be disturbed on appeal unless wholly unreasonable under the circumstances of the case. Nielson, *supra.*

Consideration of the totality of evidence on the conduct engaged in by defendants leads us to believe that the jury was warranted in finding that they had engineered a scheme to defraud plaintiff.

Various other assignments of error have been made. Though not discussed here, we have considered them and find that they are without merit.

Judgment affirmed.

NELSON, P. J., and FROEB, J., concur.