641 P.2d 891

Pete RUBI and Alice Rubi, husband and wife; Richard Keefe and Anne Keefe, husband and wife, Plaintiffs/Appellants,

v.

TRANSAMERICA TITLE INSURANCE COMPANY, a corporation, Defendant/Appellee.

Pete RUBI and Alice Rubi, husband and wife; Richard Keefe and Anne Keefe, husband and wife, Plaintiffs/Appellees,

v.

A. O. VALENCIA and Edelina Valencia, husband and wife, Defendants/Appellants.

No. 2 CA–CIV 4049.

Court of Appeals of Arizona, Division 2.

Dec. 30, 1981.

Rehearing Denied Jan. 28, 1982.

Review Denied Feb. 26, 1982.

Garven W. Videen, Tucson, for plaintiffs/appellants/appellees Rubi and Keefe.

Henry J. Severyn, Tucson, for defendants/appellants Valencia.

Waterfall, Economidis, Caldwell & Hanshaw, P. C. by Peter Economidis, Tucson, for defendant/appellee Transamerica Title Ins. Co.

## OPINION

BIRDSALL, Judge.

This fraud case was tried to the court without a jury; findings of fact and conclusions of law were requested and made. Appellants Pete Rubi and wife and Richard Keefe and wife were plaintiffs below. They brought the action against appellees A. O. Valencia and wife and Transamerica Title Insurance Company. Since the individual wives were not actively involved in the conduct giving rise to the complaint, our references to appellants and to Valencia do not include their respective spouses.

The trial court found that both Valencia and Transamerica were liable for fraud, and awarded damages as follows:

1) For both Rubi and Keefe, each, $3,416.67 compensatory damages against both Valencia and Transamerica, jointly and severally.

2) For appellants, $7,500 against both Valencia and Transamerica, jointly and severally, for their attorney fees.

3) For appellants, $50,000 punitive damages, against Valencia only.

On appeal the appellants raise only one issue—Did the trial court err in failing to assess punitive damages against Transamerica?

The appellee Valencia has filed a cross-appeal against appellants which presents two other issues: 1) Did the trial court commit error in failing to dismiss the complaint because Rubi, Keefe and Valencia were joint venturers and an accounting was necessary before the action could proceed? 2) Was the amount of the punitive damages award excessive?

On both the appeal and the cross-appeal we find no reversible error and affirm.

The facts necessary for an understanding of this opinion are all found in the 69 findings of fact made by the trial court. Appellants are attorneys; Valencia was a licensed real estate salesman. In 1972, they agreed orally that they would become joint venturers in the purchase and resale of selected real property. Their agreement called for Valencia to find the properties and appellants to furnish any necessary legal work. The property was to be acquired on an equal basis with each paying ⅓ of the costs of the investment. None of the parties was to receive any consideration or benefit beyond his ⅓ share of any profits.

In pursuance of their agreement, Valencia did locate properties which were then purchased. With reference to three of these properties, however, unbeknown to appellants, Valencia misrepresented the actual purchase price from the owner. For example, one parcel was actually purchased from its owner for $13,500, but appellants were told the sale price was $15,500. The closing documents furnished to appellants used this greater price and showed each party paying ⅓, or $5,166.67, but $2,000 of Valencia's payment actually resulted from the inflated figure. In other words, he paid only $3,166.67, while both appellants actually paid $5,166.67 each. We have oversimplified this arithmetic since other closing expenses, escrow fees, etc., enter into the actual calculations but this is illustrative of the fraudulent scheme.

There were three transactions in which Valencia thus defrauded the appellants. In each purchase the appellee Transamerica was the closing escrow agent. The same employee of Transamerica handled each closing and prepared all the necessary documents. Each time two sets of papers were prepared—one showing the actual purchase price, to which appellants were not privy, and the second showing the inflated figure. The net dollar result of Valencia's fraudulent gain is the amount of the compensatory damages. No party on appeal questions this liability.

The trial court found that the Transamerica employee knew that the documents she prepared with the inflated figures were false. It further found that at all material times, she was not only acting as an escrow officer but as managing agent of the title company; also that the company (on the theory of respondeat superior) violated its fiduciary duty to appellants. In addition, the findings recite that the employee had actual knowledge that Valencia was defrauding appellants. The trial court also found, however, that her conduct was not "intentionally wrongful." Appellants argue that this latter finding is inconsistent with the other findings pertaining to the acts of the Transamerica employee. Although this contention may have some merit, it is not necessary for us to decide this question since even if her conduct was intentionally wrongful appellants are not entitled to punitive damages from Transamerica. No party has a legal right to punitive damages unless mandated by statutory or constitutional authority. *Downs v. Sulphur Springs Valley Electric Coop.*, 80 Ariz. 286, 297 P.2d 339 (1956). Given sufficient evidence, there is a legal right to have the trier of fact given the opportunity to assess such damages by reason of the gravity of the conduct, but the fact finder cannot be required to make such an award. *Downs, supra; Smith v. Chapman*, 115 Ariz. 211, 564 P.2d 900 (1977).

The appellants contend, however, that since punitive damages were found against Valencia, they should be allowed against his co-defendant. We do not agree. We recognize a division of authority on the question whether punitive damages may be apportioned between two or more defendants, or whether they may be allowed against one but not other wrongdoers. *See* Annotation, 20 A.L.R.3d 666. We find no Arizona decision discussing this question. Our review of Arizona cases on the subject of punitive damages leads us to the conclusion that the trier of fact should be allowed to determine which defendants, if any, should be required to pay such damages. *See Ahmed v. Collins*, 23 Ariz.App. 54, 55, 530 P.2d 900 (1975), which contains a statement of law appearing in many other Arizona opinions, "Punitive damages are not to compensate for a loss, but rather to punish for misconduct, and it (sic) must, therefore be a matter of discretion for the trier of fact." *See also Nielson v. Flashberg*, 101 Ariz. 335, 419 P.2d 514 (1966) and *Madisons Chevrolet, Inc. v. Donald*, 109 Ariz. 100, 505 P.2d 1039 (1973). No Arizona authority suggests that we can substitute our judgment for that of the trial court and reverse for a failure to award punitive damages.

Many recognized reasons appear in this record which could support the trial court's decision. For example, no evidence suggests that any other employee of Transamerica, much less any officer, had any knowledge of the wrongful conduct of the escrow agent. Although it is well settled that a corporation may be held liable for punitive damages because of the culpable conduct of an employee, 22 Am.Jur.2d Damages, § 260, this does not preclude the trial court from considering that the corporation's liability is vicarious. Likewise, the court could easily have concluded that Valencia was more culpable than Transamerica and therefore was the only defendant who should be punished. The fraudulent scheme originated with him and he was the only defendant to directly benefit from the deceit.

Turning now to the cross-appeal, we will first consider Valencia's contention that the amount of the punitive damages award is excessive. We begin by recogniz-

ing that on an issue such as this we are bound by the trial court's determination unless we find insufficient evidence to support it, or it is the product of prejudice, bias or improper influence. *Fousel v. Ted Walker Mobile Homes, Inc.*, 124 Ariz. 126, 602 P.2d 507 (1979); *Circle K Corp. v. Rosenthal*, 118 Ariz. 63, 574 P.2d 856 (1977). The amount of punitive damages awarded by the trial court, sitting as the trier of fact, will not be disturbed on appeal unless wholly unreasonable under the circumstances. *Fousel, supra; Andrew Brown Co. v. Painters Warehouse, Inc.*, 111 Ariz. 404, 531 P.2d 527 (1975). The court found that Valencia had a confidential and fiduciary relationship with appellants. Some evidence showed his net worth to be $600,000 to $800,000. The elaborate scheme that he alone contrived to bilk his business associates, who had placed their trust in him, deserves punishment. A smaller award might not adequately deter him from cheating others. We will not disturb the award. It is not clearly erroneous. *Santa Fe Pacific Railroad Co. v. Cord*, 14 Ariz.App. 254, 482 P.2d 503 (1971).

Finally Valencia argues that since he and appellants were in business together, as in a partnership, an accounting was a condition precedent to an action by one "partner" against another. Authority for this rule, as applied to a partnership, is found in the early Arizona cases of *Bertozzi v. Collaso*, 21 Ariz. 388, 188 P. 873, 21 A.L.R. 5 (1920), and was later applied in *Catron v. Watson*, 12 Ariz.App. 132, 468 P.2d 399 (1970). *See also* the provisions of the Uniform Partnership Act found in A.R.S. § 29–201, et seq.

■ A joint venture differs from a partnership principally because it is usually limited to a single transaction. *Smith v. Phlegar*, 73 Ariz. 11, 236 P.2d 749 (1951); *Lurie v. Arizona Fertilizer and Chemical Co.*, 101 Ariz. 482, 421 P.2d 330 (1966). A joint venture is not, however, necessarily limited to one transaction only. *Lurie, supra.*

■ The trial court concluded that the three men were joint venturers with each of the three property acquisitions constituting a separate joint venture. This legal conclusion is supported by the record and the court's findings. Valencia has not referred us to any authority holding that in a joint venture situation an accounting is a condition precedent to an action by one venturer against the other.

But even if that partnership principle is applied to a joint venture, there was an accounting in this case as to the three properties. After issue was joined, Valencia and Transamerica moved to dismiss the complaint, arguing there had been no accounting. The trial court agreed with their legal argument, but gave appellants time to file an amended complaint praying for an accounting. This was done, a master was appointed, and an accounting was made as to these three property transactions and the proceeds from sales that had been made. Valencia contends, however, that the accounting must be made first before the complaint can even properly state a claim for relief. *Catron, supra*, so holds as to a partnership.

We question, however, whether this rule should be applied in the case of a joint venture. Other courts have refused to do so. *See Elsbach v. Mulligan*, 58 Cal.App.2d 354, 136 P.2d 651 (1943); *Chapman v. Dwyer*, 40 F.2d 468 (2d Cir. 1930). *See also* 46 Am.Jur.2d, Joint Ventures § 61. Each of the authorities we have examined also emphasizes that where the action is for damages for fraud, as in the instant case, one party to the venture may sue the other. Even with a partnership, the cases recognize as an exception to the "accounting first rule" situations where a partner by his conduct is precluded from setting up as a defense the lack of an accounting. *Catron, supra; See also Laughlin v. Haberfelde*, 72 Cal.App.2d 780, 165 P.2d 544 (1946); Annot. 58 A.L.R. 621, 626. At least one case, *Paganucci v. Kalpouzos*, 78 Cal.App.2d 714, 178 P.2d 62 (1947), states that where the action is for damages from fraud committed in connection with a joint venture, an accounting is not first required.

The accounting here shows no liabilities other than the parties' interests. We can

see no reason for now setting aside the judgments and ordering a new trial.

Affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.