654 P.2d 808

Donne L. SEGUIN, a single man, on his own behalf and on behalf of CSB Investments, Inc., an Arizona corporation and CSB Investments, an Arizona general partnership, Plaintiffs/Appellees,

v.

Betty Crowley BOYD, a single woman, Defendant/Appellant.

No. 2 CA–CIV 4161.

Court of Appeals of Arizona, Division 2.

June 8, 1982.

Stompoly & Even, P.C. by John G. Stompoly, Tucson, for plaintiffs/appellees.

Jack J. Rappeport, Tucson, for defendant/appellant.

OPINION

BIRDSALL, Judge.

This is an appeal from a judgment in favor of appellee Seguin and against appel-

lant Boyd in litigation arising from their controversy as to ownership of certain property and their respective interests therein. Appellee sued appellant to recover real and personal property and money damages. His main theory was that the parties had entered into an oral agreement for the purpose of buying and selling real estate. Appellee was to provide the funds and labor to purchase and improve the property; appellant was to buy and sell the properties. According to appellee's complaint, he had provided sums in excess of $130,000. Appellee also alleged that the principal amounts of two promissory notes executed by appellant were due and owing, and sought judgment against appellant for those amounts of $6,800 and $23,000.

Appellee requested various types of relief, including an order for accounting of partnership affairs. A lengthy trial was held and voluminous exhibits are part of the record. The trial court made extensive findings of fact and conclusions of law. The findings of fact pertinent to this appeal are as follows. The parties entered into a partnership agreement for the purpose of buying and selling real estate. Appellee was to receive his entire original investment, including reasonable compensation for his labor, plus any monies advanced to appellant for her interest in the partnership. After appellee had been reimbursed in full, the parties would equally divide any profit. Appellee owned as his sole and separate properties Lot 8 of Bonita Acres and the Rock-Fairmount land (R–2 lot). He conveyed Lot 8 to the partnership as his 50% contribution and conveyed the R–2 lot to appellant, who conveyed it to the partnership as her 50% contribution. The court also found that a total of $170,596.89 was contributed to the partnership accounts by appellant contributing $900 of her separate funds and appellee contributing $169,696.89 of his separate funds, and $21,000 was contributed from the refinancing of the Van Buren property. Appellee used $42,251.24 for his personal business and the balance was used for partnership property or appellant's personal use. No funds remained in the bank account and no partnership property had been sold.

The Van Buren property, Lot 118 (Sunrise Presidio Townhomes), Lot 8, and the R–2 lot were found to be partnership properties with each partner owning one-half. Certain properties were found to be the respective parties' separate property, including the East Camden property belonging to appellant, as to which appellee was given a lien in the amount of $6,200 without interest, the lien to be recorded and the sum to be paid to appellee if and when appellant sold the property. Various items of personal property were found to be gifts from appellee to appellant. The two promissory notes executed by appellant and totaling $29,800 were to be added to a money judgment in favor of appellee and against appellant. Finally, the court found that appellant owed appellee the following sums of money as repayment for loans: (1) $2,500 for a Winterhaven property purchase option, (2) $6,239 for money advanced by appellee in connection with the North Ralph property, (3) $6,200 for the loan concerning the East Camden property, and (4) $15,000, a loan in connection with Lot 118.

The court concluded that Van Buren, Lot 8, Lot 118, and R–2 were partnership properties; that appellee should have judgment against appellant in the amount of $149,-552.39 plus $29,800 ($6,800 and $23,000 promissory notes) for a total of $179,352.39, with payment secured by a lien in that amount against the four partnership properties; and that appellee should have judgment against appellant for the $2,500, $6,239, and $6,200 loans, a total of $14,939. Appropriate documents were to be prepared by the parties to place the partnership properties in each of their names. Finally, the court directed:

"As the partnership property is sold, the net proceeds due Boyd shall be applied in satisfaction of the Judgment in favor of plaintiff Seguin. When and if the Judgment in favor of plaintiff Seguin and against defendant Boyd is satisfied, any remaining proceeds, if any, shall be divided equally between the parties. The term 'net proceeds' is intended to mean

the amount that would actually be paid or owing to the parties after satisfaction of all liens and closing costs of the sale of any property.

That Seguin shall not be permitted to seek satisfaction of the aforementioned Judgment stated in paragraph 9 above against Boyd's personal property unless there is a balance due on the Judgment after the partnership properties have been sold."

Before addressing the issues presented, we find it appropriate to comment upon the state of the record before us, which can best be characterized as a model of disarray. Each party to this lawsuit was attempting to salvage as much as possible from a confused business arrangement. It is quite clear that the parties created the situation themselves—the record is replete with instances of actions taken by one or the other to avoid "tax problems" or to obtain more favorable bank financing for their purchases. There are no partnership books, only cancelled checks and bank records. The appellee's "bookkeeper" prepared statements from these records, and a summary from these. This appeal can best be compared to a 1,000-piece jigsaw puzzle, which we have tried to solve with little help from counsel. The trial court, after determining that a partnership existed, should have appointed a master to state an account instead of disposing of the whole case. *Brandenburg v. Brandenburg,* 234 Ark. 1117, 356 S.W.2d 625 (1962). However, to avoid additional expenditure of judicial time which remand for a formal accounting would require, and because the parties have each made certain concessions and because, despite the confused state of the record, the actual final result can be accurately determined, we are able to proceed without a further accounting.

Appellant attacks the sufficiency of the evidence to support the money judgment awarded to appellee and to support a finding that the R–2 lot was partnership property. She also contends that the trial court erred in ordering that the judgment be satisfied out of the net proceeds due appel-

lant and if such net proceeds were insufficient, allowing satisfaction of any remaining balance due from appellant's personal property.

■ Appellant's position in the trial court and on appeal is that the R–2 lot belonged to her as her sole and separate property because it was conveyed to her by appellee as a gift. The evidence, both documentary and testimonial, shows otherwise, and demonstrates that the conveyance to appellant of the R–2 lot was solely for the purpose of supplying appellant with a contribution to the partnership. The trial court found, and there is evidentiary support for the finding, that appellee owned Lot 8 and the R–2 lot as his separate property. It also found that he had conveyed the R–2 lot to the appellant, who had conveyed it to the partnership as her 50% contribution. This finding, however, conflicts with the finding that appellant owes appellee $6,800 plus $23,000 on the promissory notes executed as part of these "machinations."

On the state of the record before us, we can reconcile this conflict in but one way. The record shows that Lot 8, contributed by appellee to the partnership at a value of $9,800 and the R–2 lot, valued at $26,000, were totally a contribution to the partnership by the appellee. Since appellant was not given credit for her purported "contribution" she should not have been required to pay the $29,800. Appellee, however, contributed both properties to the partnership and is entitled to be reimbursed for this additional investment of $9,800 (Lot 8) and $26,000 (R–2 lot), totaling $35,800. We agree that the R–2 lot is partnership property but hold that the two promissory notes totaling $29,800 must be cancelled, and that appellee is entitled to a reimbursement of $35,800 from the sale of the partnership properties.

■ Appellant's attack on the amount and form of the judgment for $149,442.39 in favor of appellee is well-taken. As noted above, appellee claimed a partnership existed. Appellant denied the existence of a partnership and appellee asked for an accounting. A partner may enforce his

right by an action for an accounting, an equitable proceeding for comprehensive investigation of transactions and adjudication of rights of the partners. Crane and Bromberg, *Law of Partnership,* § 72 (1968). The general rule is that the only action that will lie between co-partners in regard to partnership business is an action for an accounting. *Miner v. Rogers,* 115 Ariz. 463, 565 P.2d 1324 (App.1977); *Clark v. Edris,* 120 Ariz. 244, 585 P.2d 264 (App.1978). An accounting action is designed to produce and evaluate all testimony relevant to the various claims of the partners. *Weidlich v. Weidlich,* 147 Conn. 160, 157 A.2d 910 (1960) ("the one great occasion for a comprehensive and effective settlement of all partnership affairs"). An accounting may be granted even where the existence of the partnership is denied. *Bailly v. Betti,* 241 N.Y. 22, 148 N.E. 776 (1925). Questions of ownership of property, i.e., whether individual or partnership, may be adjudicated in an accounting action. *Few v. Few,* 239 S.C. 321, 122 S.E.2d 829 (1961).

Although no formal accounting was rendered, appellee did ask for an accounting and the trial court attempted to strike a balance between the parties.

The trial court found that after appellee had been reimbursed for his investment in the partnership, the parties would equally divide any profit. Thus we see that the parties' agreement was in keeping with the rules for distribution on dissolution. A.R.S. § 29–240. Appellee's own documentary evidence shows that he, personally and through his father, contributed funds of $119,273.13, not $169,696.89 as found by the trial court.[1] This is corroborated by testimony of appellee's witness who prepared the summaries of all the records. According to her, approximately $120,000 was the total amount of money contributed by ap-

pellee directly or though his father. The summary also shows that the sum of $42,251.24 was expended for appellee, and this too was corroborated by his bookkeeper. Thus the net sum of money contributed to the partnership by appellee was $77,021.89, not $149,552.39 as found by the trial court. As discussed above, appellee contributed Lot 8 and the R–2 lot to the partnership and he was therefore entitled to their reasonable market value at the time they were contributed. *Bass v. Daetwyler,* 305 S.W.2d 339 (Mo.App.1957). Adding the value of $35,800 to the monetary contribution, we find that appellee contributed a total net amount of $112,821.89 to the partnership and the appellee is entitled to reimbursement of this amount before any profits are divided.

■ We agree that the trial court erred in directing that the amount due appellee be paid out of the net proceeds due appellant and, if such amount was insufficient, allowing satisfaction of any balance from appellant's personal property. Upon liquidation, the rules of payment are governed by A.R.S. § 29–240. The distribution of partnership assets in the course of winding up consists first in the payment of creditors other than partners, then come the claims of the partners other than those for repayment of capital contributions or profit, such as claims for advancement made by partners, then those owing to partners in respect of capital, and finally, any remaining balance of partnership property is distributable as profits. *See Mahan v. Mahan,* 107 Ariz. 517, 489 P.2d 1197 (1971).

■ Appellant's final contention is that she did not insure the return of appellee's investment to him beyond the limits of partnership assets. However, she overlooks A.R.S. § 29–218 which provides, in part:

| | |
|---|---|
| Appellee | $169,696.89 |
| Appellant | 900.00 |
| Refinancing | 21,000.00 |
| which totals | $191,596.89. |

The error is in the amount of the contribution from the appellee which should have been $119,273.13. The appellant did contribute $900.00 and the balance came from the refi-

---

1. The very first finding of the trial court involving any partnership figures is clearly wrong on its face. The trial court correctly found that a total of $170,596.89 was contributed to the partnership, but then found this was made up of contributions from:

"The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

1. Each partner shall be repaid his contribution, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; *and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits.*" (emphasis ours)

The parties' agreement provided for equal sharing of profits and losses. Consequently, if the partnership assets are insufficient after payment of creditors of the partnership to repay appellee his contribution as set forth above, appellant is responsible for one-half of the net loss.

We therefore hold that the four parcels of property determined to be partnership property by the trial court must be sold as ordered by the trial court, and the proceeds of sale applied first to payment of creditors other than partners and then to repayment of appellee of his "investment," the sum of $112,821.89. The surplus, if any, is to be divided equally between the parties. If the sum remaining after the payment of partnership creditors is insufficient to repay appellee's contribution, he is entitled to reimbursement from appellant of one-half of the deficiency. The parties will be equally liable for any additional partnership expenses incurred prior to final liquidation.

One additional matter must be addressed. The trial court found that appellant owed appellee certain sums of money as repayment for loans. Appellant conceded that she owed appellee $2,500 from money borrowed from him to purchase an option on a parcel of property not involved in the litigation (Winterhaven). She also conceded that she owed him the sum of $6,200 for money advanced by appellee in connection with the purchase of a parcel of property owned by her alone, to be repaid when the property was sold. These two items are personal obligations of appellant's and have no relationship to the partnership. The trial court also found, however, that appellant owed appellee the sum of $6,239 for money advanced in connection with another parcel of property (already sold) and the sum of $15,000 for the purchase and decorating of the Sunrise Presido Townhome (Lot 18), determined to be partnership property. The latter sum, notwithstanding the finding, was not included in the judgment.[2] Appellant is correct as to the $6,239 sum—partnership funds were used for the purchase of the property involved and therefore appellee is being reimbursed twice. This was error; the sum of $6,239 should not be included in the judgment. The appellee is therefore only entitled to judgment against the appellant in the sum of $2,500 and to a recordable lien of $6,200 against her separate Camden Street property.

We affirm the judgment as to the existence of the partnership and determination that the four described parcels of real estate are partnership assets. We reverse as to the money judgment in favor of appellee and remand the matter for further proceedings consistent with this opinion.

HOWARD, C.J., and HATHAWAY, J., concur.

---

nancing, a truck sale, interest income and a bank loan, totaling $50,423.76. These figures produce the correct amount of the total contributions, $170,596.89.

**2.** Appellee has not cross-appealed from the judgment as to this exclusion and we therefore need not consider it. We note, however, that this finding conflicts with the trial court's finding that Lot 118 was partnership property.