706 P.2d 728

Ronald R. TANKERSLEY and Jay Lynn Tankersley, husband and wife; Roland May and Ann May, husband and wife; David J. McKay; May/Tankersley/McKay Joint Venture, an Arizona Joint Venture; and May/Tankersley Joint Venture, an Arizana Joint Venture, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA; Hon. William N. Sherrill, a Judge thereof; L.B. Nelson Corporation of Tucson, a California corporation; Lightning "A" Ranch Venture, an Arizona Joint Venture; Castlerock Ranch Venture, an Arizona Joint Venture; and Pioneer Trust Company of Arizona, an Arizona corporation, Respondents.

No. 2 CA–SA 0149.

Court of Appeals of Arizona, Division 2.

Dec. 19, 1984.

Review Denied April 23, 1985.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Michael J. Meehan and Wilbur M. Roadhouse, Tucson, for petitioners.

Winston & Strawn by Logan T. Johnston, Daniel D. Maynard and Clifford N. Roth, Phoenix, for respondents L.B. Nelson Corp., Lightning A Ranch Venture and Castlerock Ranch Venture.

HATHAWAY, Judge.

OPINION

In 1978, petitioners (hereinafter referred to collectively as "Tankersley") and the real parties in interest, except Pioneer Trust Company of Arizona, (hereinafter referred to collectively as "Nelson") entered into two joint venture agreements to subdivide, develop and sell certain real property owned by Tankersley and located in Pima County. Stated in the simplest terms, the

agreements provided that Tankersley was to contribute the property to the joint ventures and Nelson was to serve as managing agent of the joint ventures and to develop the property as general contractor. The terms of the agreements, which are lengthy, are irrelevant here except for Article XIX, which pertains to the term of the agreement, default and remedies, and which is virtually identical in both agreements. In addition to stating the term of each agreement and defining the events constituting an event of default under the same, this article sets forth the remedies available to each party in the event of a default. Specifically, subparagraphs B and E of Article XIX provide:

"B. In the event [Tankersley] or NELSON shall file a bankruptcy petition, either voluntary or involuntary, or shall be the subject of the invocation of the jurisdiction of the bankruptcy court under any provision of the Bankruptcy Act, and said petition and jurisdiction of the Bankruptcy Court is not discharged and terminated within forty-five (45) days thereafter, or makes an assignment for the benefit of creditors or is otherwise insolvent or is suspended from doing business by any other governmental agency, then *the remaining party shall have a ninety (90) day option in which to purchase the entire interest of said retiring party for a purchase price equal to the then remaining capital account of such party,* or may elect to terminate and liquidate the joint venture by the exercise of any of its remedies provided in subparagraph E of this Article XIX.

\* \* \* \* \* \*

E. In the event the defaulting party does not cure its default as provided in subparagraph D of this Article XIX, *the non-defaulting party may elect to exercise any of the following remedies:*

(1) In the event NELSON is the defaulting party [Tankersley] may elect to terminate the joint venture and exercise the remedies afforded it under the terms of the deed of trust provided for in Article VIII.

(2) *The non-defaulting party may elect to terminate the joint venture and purchase all of the defaulting party's right, title and interest in the joint venture for an amount equal to the defaulting party's capital account at the time of default.*

(3) The non-defaulting party may elect to terminate the joint venture and obtain a partition of the joint venture property so that each party shall receive that percent of the joint venture property which is equal to the percent that its capital contribution bears to the total capital contribution of the parties, and the non-defaulting party shall be entitled to recover from the defaulting party the costs of curing the default including reasonable attorney's fees, interest and costs.

(4) In the event of a default under Article XIX(c)(7), NELSON may acquire the entire right, interest and title in and to, the property of the joint venture by paying in cash to [Tankersley] or the parties then entitled, within thirty days of appraisal an amount equal to 50% of the then fair market value of project (as determined by agreed MAI appraisal) after deduction for capital accounts then due each party. If necessary each party shall designate an arbitrator who shall select a third arbitrator who with the two original selected arbitrators determine the fair market value. In the event NELSON determines not to so acquire, [Tankersley] may acquire such complete interest by paying to NELSON an amount equal to 35% of the then fair market value as above determined. If neither elects to purchase as provided above, the project property shall be partitioned in accordance with applicable law.

(5) The non-defaulting party may elect to exercise any other remedy available at law or in equity.

(6) The various rights and remedies herein contained and reserved to each of the parties shall not be considered as exclusive of any other right or remedy of such party, but shall be construed as cumulative and shall be in addition to every other remedy now or hereafter existing at law, in equity, or by statute.

(7) No delay or omission of the right to exercise any power by either party shall impair any such right or power, or shall be construed as a waiver of any default or as acquiesence therein. One or more waivers of any covenant, term or condition of this lease by either party shall not be or be deemed to be a waiver of a subsequent breach of the same or any other covenant, term or condition. The consent or approval by either party to or of any act by the other party of a nature requiring consent or approval shall not be deemed to waive or render unnecessary consent to or approval of any subsequent similar act.

(8) In all cases in which acts, approvals, denials, requests, notices, demands, compromise or settlements are required or requested of, or permitted to [Tankersley], NELSON shall be entitled to deliver to, or receive from, actions and decisions of, Ronald Tankersley and to rely upon information received from Ronald Tankersley, who shall act in all matters on behalf of [Tankersley]." (Emphasis added)

Pursuant to the agreement, title to the property was transferred in trust to Pioneer Trust Company, Nelson obtained necessary financing, and development and construction commenced. By 1982, however, only a few homes had been constructed and the project began experiencing severe financial difficulties. Notice of default was apparently first given to Nelson in August of 1982. In September of 1982, the parties executed an addendum to the joint venture agreements which permitted Nelson to obtain additional financing from another lender and to encumber six of the lots in the joint venture property. The addendum provided, inter alia, that in the event of a default by Nelson on the financing agreement and upon notice from Tankersley, Pioneer was to convey the lots to Tankersley free and clear of any claim or right by Nelson.

The situation continued to worsen during the next few months. As of November, materialmen's and mechanic's liens in the total amount of more than $600,000 were filed against the property, Nelson apparently defaulted on the underlying financing agreements, and all construction ceased. By letter dated January 20, 1983, Tankersley notified Pioneer of Nelson's uncured default on the addendum agreement and instructed Pioneer to convey the lots subject to that agreement to Tankersley. Six days later, Tankersley instructed Pioneer to convey all of the joint venture property to a separate trust, of which Nelson was not a beneficiary, and Pioneer did so. By letter dated January 28, 1983, Tankersley then notified Nelson of its decision to exercise its right to terminate the joint ventures pursuant to Article XIX of the agreements. Although the letter does not specify subparagraph (E)(2), it is apparent from Tankersley's request in the letter for "detailed and audited statements of expenses in your capital account, so that we can make the necessary arrangements to fund you any monies due under the terms of our contract" that Tankersley was electing to purchase Nelson's interest in the property for the amount of its capital account.

In February 1983, Nelson filed suit on its own behalf and on behalf of the joint ventures against Tankersley and Pioneer Trust Company, seeking damages for breach of the joint venture agreements, fraud, conversion, racketeering, and breach of fiduciary duties; seeking to impose a constructive trust on the joint venture property; and seeking to enjoin Tankersley from denying Nelson access to joint venture property and records and from selling or encumbering the joint venture property. Tankersley answered and filed a four-count counterclaim seeking dissolution of the joint ventures, an accounting, and declaratory relief. More specifically, count three of the counterclaim alleged that Tankersley was entitled to a declaration of their rights "including, but not limited to, these Defendants' rights to purchase Plaintiffs' respective interests in the ... project, as specified by the various Joint Venture Agreements and addenda thereto." This count also sought a declaration that the joint ventures were dissolved on or about January 28, 1983, that Tankersley was entitled to wind up the affairs of the joint

ventures, and that Nelson was entitled to its unrecouped capital contribution. Nelson's request for preliminary injunctive relief was denied, the court finding, inter alia, that the action was primarily for money damages, that Nelson had not demonstrated a reasonable probability of prevailing in the litigation, and that "[o]n the contrary the Court finds that payment on the property *mortgages* was in default at the time that defendants took the action which precipitated plaintiff's lawsuit...." (Emphasis in original)

Subsequently, Tankersley moved to sever and accelerate the trial of count three of the counterclaim. The motion was granted and trial set for September 25, 1984. Nelson's motion to reconsolidate was denied on August 20, 1984. Five days prior to the date set for trial of count three, Nelson again moved to reconsolidate or, in the alternative, dismiss. Following a hearing, the trial court granted the motion to reconsolidate and ordered the matter referred to a special master for an accounting. In response to questions from counsel for Tankersley as to the basis for its ruling, the court stated: "Well, I feel certainly that in any joint venture type agreement, any partnership agreement where the financial transactions are not simple, an accounting has to be done before you go into any other issues."

This special action was taken from the aforementioned order reconsolidating the case and referring the matter to a special master for an accounting. Because we agree with the petitioners that the trial court abused its discretion or failed to exercise a discretion which it had a duty to exercise, and petitioners have no equally plain, speedy and adequate remedy by appeal, we accept jurisdiction and grant relief.

■ The trial court's decision was apparently based on a literal application of the general rule, frequently applied to joint ventures, that one partner cannot sue another partner at law, as distinguished from an action in equity, with respect to partnership transactions except after a full accounting and balance has been had. See,

e.g., *Seguin v. Boyd,* 134 Ariz. 172, 654 P.2d 808 (App.1982); *Clark v. Edris,* 120 Ariz. 244, 585 P.2d 264 (App.1978); *Miner v. Rogers,* 115 Ariz. 463, 565 P.2d 1324 (App.1977). Without expressing any opinion as to the continuing validity of this rule or the propriety of its application to joint ventures, see *Rubi v. Transamerica Title Insurance Company,* 131 Ariz. 403, 641 P.2d 891 (App.1981), we hold simply that the rule does not apply automatically and without exception where, as here, the parties have by contract otherwise agreed.

■ As noted above, the parties to these joint ventures expressly set forth in detail their agreement as to the remedies to be available in the event of default by either party, which included the right of the non-defaulting party to terminate the joint ventures and purchase the defaulting party's interest for the amount of his capital account on the date of default. The petitioners have made clear their election of this remedy and, assuming that Nelson has in fact committed an event of default which would permit such an election under the terms of the parties' agreement, there is no reason why this remedy should not be enforced. Severance and acceleration of the trial of count three of the counterclaim was therefore eminently appropriate, and the trial court abused its discretion in reconsolidating the action and referring the matter to a special master for an accounting. Since the parties have agreed that one permissible remedy shall be the right to buy out the defaulting party's interest, and Tankersley has elected that remedy, it was incumbent upon the trial court to decide initially the question of whether or not Nelson's conduct constituted an event of default within the meaning of Article XIX of the agreements. In determining this issue, the court will of necessity consider the issues of whether Tankersley complied with provisions of the agreement pertaining to notice and opportunity to cure, and whether Tankersley by such conduct as ordering Pioneer to convey all joint venture property to a separate trust or otherwise has waived or is estopped from asserting its right to elect this remedy. If the court determines that Nelson's conduct constitut-

ed an event of default and that Tankersley was entitled to elect the buy-out remedy, the only remaining question is the amount of Nelson's capital account on the date of default. Only in the event that the court determines that Tankersley was not entitled to elect the buy-out remedy must the action proceed to a full accounting.

The order of the trial court reconsolidating the action and referring the matter to a special master for an accounting is vacated, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

BIRDSALL, C.J., and HOWARD, J., concur.