783 P.2d 1199

**Nancy J. SERTICH and C. William Sundblad, Plaintiffs–Appellants,**

**v.**

**Steve MOORMAN General Partner and One Civic Center Plaza Ltd. Partnership, a limited partnership; Gilbert Wilson and Eleanor Wilson; Brent Osborn and Julia Osborn, Defendants–Appellees.**

**No. CV–88–0484–PR.**

Supreme Court of Arizona,
En Banc.

Nov. 14, 1989.

Kalish & Forrester, P.C. by Marc Kalish, S. Cary Forrester, Phoenix, for plaintiffs-appellants Nancy J. Sertich and C. William Sundblad.

Davis & Lowe, P.C., Phoenix by Douglas G. Wymore, for defendants-appellees Steve

Moorman and One Civic Center Plaza Ltd. Partnership.

Dioguardi, Poli & Ball, Ltd. by James B. Ball, Michael K. Pazdernik, Phoenix, for defendants-appellees Gilbert Wilson and Eleanor Wilson.

Myers & Barnes, P.C. by William J. Reckling, III, Phoenix, for defendants-appellees Brent Osborn and Julia Osborn.

GORDON, Chief Justice.

Nancy J. Sertich and C. William Sundblad (plaintiffs) seek review of a court of appeals' decision affirming summary judgment against them. The court of appeals agreed that this action could not proceed without an accounting and that plaintiffs lacked standing to seek an accounting. *Sertich et al v. Moorman et al*, 159 Ariz. 311, 767 P.2d 34 (Ariz.Ct.App.1988). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and Ariz.R.Civ.App.P. 23, 17B A.R.S. We now vacate the court of appeals opinion, reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

*Facts and Procedural History*

One Civic Center Plaza Ltd. Partnership (hereinafter "CCP") was formed in 1983 to develop a commercial building in Scottsdale, Arizona. Gilbert Wilson, Steve Moorman and Steven Bunch were general partners. The sole limited partner was One Civic Center Associates, another limited partnership in which defendant Brent Osborn was general partner.

In 1984, Steven Bunch assigned to plaintiffs his right to repayment of a loan he made to CCP while retaining his partnership interest. In 1985, Moorman, Wilson and CCP filed a separate action to force Bunch to execute a certificate of cancellation on the limited partnership. The court found that CCP had been dissolved and that winding up had begun. It then ordered Bunch to sign and execute the certificate of cancellation, which became effective March 19, 1985.

Prior to the effective date of CCP's dissolution, plaintiffs filed a complaint against CCP, Moorman, Wilson, Osborn, and their respective spouses, seeking payment of the debt owed by CCP to Bunch. The parties do not dispute that as of July 31, 1984, CCP was indebted to Bunch in the sum of $55,535.17. Sundblad claimed an assignment in the amount of $20,000 and Sertich claimed an assignment in the amount of $27,500. Defendants assert, however, that CCP set off its debt to Bunch against the claims of Bunch's creditors, including general partners Wilson and Moorman, before plaintiffs filed their complaint. The dissolution and winding up were accomplished without an accounting among the partners.

The trial court granted defendants' motion for summary judgment and dismissed the action for failure to state a claim upon which relief could be granted. It found that the assignee-plaintiffs stood in no better position than the assignor-partner and that, under the general accounting rule, the assignor-partner could not sue on the debt without first seeking an accounting from CCP. In addition, the trial court found that plaintiffs lacked standing to seek an accounting because they were not assignees of a partnership interest.

Plaintiffs appealed from the summary judgment and the court of appeals affirmed. Because the accounting rule had been adopted as the law of this jurisdiction, the court of appeals did not consider plaintiffs' policy arguments in support of abolishing the rule. Moreover, the court held that the facts of this case did not invoke any of the recognized exceptions to the accounting rule and that the plaintiffs lacked standing to sue for an accounting.

We accepted review to examine the continuing validity and applicability of the accounting rule in Arizona. A review of the historical origins of the rule and the evolution of our procedures leads us to conclude that the accounting rule should be abolished in Arizona.

*Historical Origin of the Accounting Rule*

One common statement of the general accounting rule is that "[i]n the absence of statutory authority, partners ordinarily

may not maintain actions at law among themselves, as opposed to equitable actions, where the subject of the action relates to partnership transactions, unless there is a prior accounting or settlement of the partnership affairs." 59A Am.Jur.2d *Partnership* § 542 at 513 (1987) (citations omitted). The rule establishes a condition precedent to a partner's right to maintain an action at law concerning partnership matters. *Id.* A formal accounting is more than a presentation of financial statements; it is a comprehensive investigation of transactions between the various partners and an adjudication of their relative rights. A. Bromberg, *Crane and Bromberg on Partnership* § 72, at 410 (1968).

The accounting rule affects the remedy available, not the right. Its origins lie in the mutual fiduciary obligations of the partners. *Id.* The rule, rooted in our early jurisprudence, was transported to the United States from England, where separate courts existed for equity and law.

Early English common law recognized the remedy known as an "action in account." This action was established at a time when the courts of law did not recognize a simple contract action and, initially, it merely compelled a bailiff to account for his stewardship. *See generally,* D. Dobbs, *Remedies* § 4.3 at 252–53 (1973). Later, courts extended the action to simple debt transactions between partners because of the analogous fiduciary relationship. With the development of assumpsit at law and the emergence of equitable accounting action, however, the action fell into disuse. *Id.*

Many claims for money damages on simple contracts became actionable following the development of assumpsit at law. Relief was not available at law for complex transactions, however, because a jury could not be expected to work out the details of complex accounts. Claims involving complex transactions between partners, therefore, required equity's intervention and thus the action for an accounting in equity emerged. *Id.* This action evolved, in part, because of the unique availability of the masters of the Chancery Court who served as auditors and reported complex accountings to the court. Moreover, the Chancellor had the power to compel the actual parties' testimony, a discovery device forbidden the judge at law. Finally, parties standing in fiduciary relationship to each other could challenge a breach of that relationship only in a court of equity. For complex transactions between partners, therefore, the only remedy available was in equity. *Id.*

In the United States, the rationale underlying the rule became further defined as it applied to remedies between partners during the continuance of the partnership. Our early jurisprudence did not recognize a partnership as a separate legal entity and, consequently, all proceedings to enforce partnership rights or partnership obligations were cognizable only against the partners individually. J. Story, *Commentaries on the Law of Partnership* (1841) (*reprinted in Historical Writings in Law and Jurisprudence* 322–25 (1980)).

No partner could sue another for moneys paid or liabilities incurred on behalf of the partnership for several reasons. Under the principles of common law pleading, a party could not be both plaintiff and defendant in the same suit. *Id.* If partners sued copartners, they technically would be suing themselves. In addition, early courts were concerned that until all of the partnership concerns were ascertained and adjusted, it was impossible to determine whether a particular partner was a debtor or creditor of the firm.[1] A settlement of the partnership concerns was unavailable at law, in part, because of the "serious inconvenience" of sorting out the potential cross claims.[2]

---

1. The view that there was no cause of action in favor of any partner against a copartner appears to have originated from Justice Hand's reiteration of Lord Cottenham's discussion of the terms "creditor" and "debtor" as applied to partnership transactions. E. Gilmore, *Handbook on the Law of Partnerships* 459–63 (1911).

2. A description of early procedural complexity is found in *Seeley v. Dunlop,* 157 Md. 378, 146 A. 271 (1929).

Also, an action at law to determine each partner's share of the final balance effectively changed the original contract from a joint contract between all partners to a several contract. J. Story, *supra*, at 322–35.

Even in equity, an accounting ordinarily was not enforced except upon dissolution of the partnership. This practice reflected equity's reluctance to use its injunctive powers to enforce the positive covenants between partners. *Id.* at 326–27. Thus, specific performance of the partnership contract was not an available remedy due to the potential for ongoing court involvement in the continuing partnership. A. Bromberg, *supra*, § 69. If, however, the negative covenants were breached and the fiduciary relationship jeopardized, equity would consider the relationship severed and order a partnership accounting and dissolution. J. Story, *supra*, at 328–332.

Despite the merger of law and equity in most jurisdictions, the early commentators noted that abolishing the distinctions between law and equity did not create a new cause of action at law. A suit could not be maintained "unless the case made by the pleadings and proof is such as would formerly have called for the interposition of a court of equity." E. Gilmore, *supra*, § 155 at 471–72; *see also L.H. Heiselt, Inc. v. Brown*, 108 Colo. 562, 120 P.2d 644, 648 (1941) (quoting 2 Rowley, *Modern Law of Partnership* § 743).

Over the years, this judicially created rule of convenience and restriction on the forum available to enforce the remedies became a bar to a cause of action. In some instances, the rule was interpreted to stand for the broad proposition that no suit could be maintained between partners and partnerships. *Malott v. Seymour*, 101 Cal. App.2d 245, 225 P.2d 310 (1950); *Cohen v. Ziskind*, 290 Mass. 282, 195 N.E. 346 (1935). In others, the rule was applied to reach absurd results. *See, e.g., State v. Quinn*, 245 Iowa 846, 64 N.W.2d 323 (1954) (partner could not be charged with obtaining money by false pretenses because an accounting is necessary to determine whether the taking was wrongful).

Some commentators urged that the rule, properly applied, merely prohibited a partner from suing a partnership, or a partnership suing a partner, at law on a joint right or obligation without an accounting. *See, e.g.,* A. Bromberg, *Law of Partnership* § 70 (1968). Thus, if the partnership obligation was joint and several, the partner could maintain an action at law against the copartners. *Id.* Another view was that the accounting requirement was the exception, not the rule. In other words, the general rule was that one partner may sue another at law, but if a claim arises out of a complex, unliquidated partnership transaction, the action must be brought in equity where the complex transaction could be liquidated. Mechem, *The Law of Joint Adventures*, 15 Minn.L.Rev. 644, 646 (1931) ("[T]he test of the right of one partner to sue another at law upon a partnership transaction is logically reduced to this factual determination—are the partnership affairs of the parties sufficiently simplified so that the court can pronounce an intelligent judgment?").

Nevertheless, most courts applied the rule *pro forma* to hold that an accounting or settlement of partnership affairs was a prerequisite or condition precedent to a right of action at law among partners with regard to partnership affairs. *See* Annotation, *Actions at Law Between Partners and Partnerships*, 168 A.L.R. 1088, 1091 (1947). Courts requiring an accounting gave various justifications, including: (1) the rule avoided premature and piecemeal judgments among partners; (2) a partner did not become a debtor or creditor of the copartner but of the firm in partnership transactions and, until a final settlement, no debt was due from one partner to another; (3) a party could not be both plaintiff and defendant; (4) one partner did not own or have a right to any specific portion of the partnership property; and (5) the complicated accounting required to establish the rights of partnership parties was not a proper subject for jury consideration and was better left to a court of equity. *See generally* 59A Am.Jur.2d *Partnership* § 544 (1987) and cases cited therein.

*Development of the Rule in Arizona*

In Arizona, this Court first applied the accounting rule in an action between partners, where one alleged the other had converted partnership property. We examined the rationale given in other jurisdictions and agreed that a partner's right to partnership property is an undivided interest in all assets of the firm, subject to the interest of every other partner, and that all of the partners jointly hold all of the firm assets subject to the payment of partnership debts and liabilities. *Bertozzi v. Collaso,* 21 Ariz. 388, 188 P. 873 (1920). This Court determined that "the individual interest of one partner in the firm property and business [could] only be ascertained by a settlement of the partnership." *Id.* at 391, 188 P. at 874. We dismissed the case, holding that the plaintiff could not obtain relief in a court of law, and noted:

> These and similar restrictions are the unavoidable results of the technical rules of law in their application to the mutual relations of copartners, and serve to show that, in a court of law, the rights of copartners cannot always have corresponding and adequate remedies. These must often be sought in a court of equity only.

*Id.* at 393, 188 P. at 874 (quoting *Homer v. Wood,* 11 Cush. (Mass.) 62).

*Bertozzi* became the foundation case for the proposition that "[i]t is well settled [in Arizona] that 'an accounting and settlement between copartners is a condition precedent to an action by one against another upon partnership claims and transactions.'" *Boyle v. Webb,* 54 Ariz. 188, 195, 94 P.2d 642, 645 (1939) (citing *Bertozzi*). Our next discussion of the accounting rule was in the 1947 case, *Jacob v. Cherry,* 65 Ariz. 307, 180 P.2d 217 (1947). Consistent with *Bertozzi*'s facts, we dismissed an award of partnership assets due to lack of an accounting. *Id.* at 310, 180 P.2d at 218.

Subsequent decisions of this Court and our court of appeals found exceptions to the general rule. *See, e.g., Pejsa v. Bridges,* 69 Ariz. 315, 213 P.2d 473 (1950) (terms of dissolution agreement provided adequate consideration, therefore lack of an accounting not a bar); *Rubi v. Transamerica Title Ins. Co.,* 131 Ariz. 403, 641 P.2d 891 (App.1982) (accounting rule should not apply to joint venturers but even if it does, Arizona recognizes an exception where a partner, by his conduct, is precluded from setting up the lack of an accounting as a defense); *Wood v. Holiday Mobile Home Resorts, Inc.,* 128 Ariz. 274, 625 P.2d 337 (App.1980) (accounting rule not extended to limited partnerships because the relationship is dissimilar to general partnerships).

In fact, the only circumstances to which our courts have applied the rule somewhat consistently to bar a cause of action involved claims for conversion or for a share of partnership assets. *See, e.g., Clark v. Edris,* 120 Ariz. 244, 585 P.2d 264 (App. 1978) (claims for breach of partnership agreement and conversion of partnership assets are actions growing out of partnership transaction and will not lie until business is wound up and accounts settled, although loans from one partner to another may be recovered in an action at law); *Catron v. Watson,* 12 Ariz.App. 132, 468 P.2d 399 (1970) (where partnership agreement provided that upon dissolution the business was to be wound up, debts paid, and any surplus divided between the parties, a full accounting is required); *but see Fernandez v. Garza,* 88 Ariz. 214, 354 P.2d 260 (1960) (partner's action to recover share of partnership assets from deceased partner's estate allowed despite lack of accounting and uncertain evidence of actual accumulation during existence of partnership); *Seguin v. Boyd,* 134 Ariz. 172, 654 P.2d 808 (App.1982) (in dispute over partnership property and partner's interest therein, court of appeals did not require remand for an accounting in the interest of judicial economy despite complicated partnership transactions and acknowledged appropriateness of formal accounting).

*Continuing Validity of the Accounting Rule in Arizona*

Plaintiffs argue that the accounting rule has outlived its usefulness in Arizona and, because of changed conditions, its contin-

ued enforcement is illogical, impractical, or inequitable. To the extent that the rule has created a condition precedent to maintaining a cause of action at law between partners or a partner and the partnership, we agree. When the original justifications for the rule are reviewed in light of our rules of procedure as they have evolved and the substantive provisions of the Arizona Uniform Partnership Act, we believe that changed conditions render the substantive and procedural bases for the rule obsolete.

The merger of law and equity in our courts of general jurisdiction eliminates the procedural problems associated with the accounting rule. Today, trial courts in Arizona enjoy all of the powers formerly vested in the separate courts and the trial judge sits as both chancellor in equity and judge at law.[3] The merger of law and equity eliminates the distinction upon which the rationale that a party cannot be both plaintiff and defendant was based. *See, e.g., Balcor Income Properties, Ltd. v. Arlen Realty, Inc.*, 95 Ill.App.3d 700, 51 Ill.Dec. 198, 420 N.E.2d 612 (1981) (citing *Catron v. Watson*, 12 Ariz.App. 132, 468 P.2d 399 (1970) (Jacobson, J., specially concurring)). Moreover, our liberal pleading rules, particularly Rule 18 "Joinder of Claims and Remedies," alleviate the procedural problems associated with the distinct remedies available under law and equity as well as the concern for avoiding premature and piecemeal judgments between parties.[4] Today, the joinder rule allows a party to bring any and all claims and request any and all remedies in one action in our courts of general jurisdiction. *Staffco, Inc. v.*

*Maricopa Trading Co.*, 122 Ariz. 353, 595 P.2d 31 (1979).

Our rules of procedure also remedy the concern that a jury cannot be expected to sort out complex partnership transactions and that such matters are best left to the court sitting in equity. Rules 38(b), 39(a)(1) and 53, Ariz.R.Civ.P. 16 A.R.S., preserve equitable procedures, adapt them to modern practice, and allow the court to appoint a master to sort out complex transactions if needed.

The legislature's enactment of the Arizona Uniform Partnership Act changed the common law and eliminated the substantive bases for the general accounting rule. By statute, the legislature declared that the partners' liability for tortious conduct, breach of fiduciary duty, and all other debts and obligations of the partnership is joint and several. A.R.S. § 29–215. The "oneness" concern, originally creating a substantive barrier to a cause of action at law because equity provided the only remedy for a breach of the fiduciary relationship at law, was eliminated.

The remaining justifications are addressed adequately by A.R.S. §§ 29–221 and 29–222. Every partner is accountable to the partnership as a fiduciary and retains an inherent partnership right to a formal accounting as to partnership affairs under certain circumstances. Thus, if the transactions between partners are such that any debts owed cannot be determined without an accounting, or if they involve apportioning partnership property, any partner can demand a formal accounting under the circumstances described in A.R.S. § 29–222.[5] By enacting the Arizona

**3.** Rule 1 Ariz.R.Civ.P. 16 A.R.S. states:
  These rules govern the procedure in the superior courts of Arizona in all suits of a civil nature whether cognizable as cases of law or equity.
  Rule 2 provides:
  There shall be one form of action to be known as "civil action."

**4.** Rule 18 Ariz.R.Civ.P. 16 A.R.S. states:
  18(a) Joinder of claims. A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate

claims, as many claims, legal or equitable, as he has against an opposing party.
  18(b) Joinder of remedies.... Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action....

**5.** The circumstances under which a partner retains a right to a formal accounting include:
  1. If he is wrongfully excluded from the partnership business or possession of its property by his copartners.
  2. If the right exists under the terms of any agreement.

Uniform Partnership Act, the legislature eliminated the substantive principle differentiating actions of an equitable nature and imposing a barrier in the common law yet protected and provided for the right to maintain the action for an equitable accounting in appropriate circumstances.

This case illustrates that continued enforcement of the accounting rule is indeed illogical, impractical, and inequitable. The partnership was dissolved, the affairs wound up, and a certificate of cancellation executed. The alleged debt is of an ascertainable amount, evidenced by two promissory notes, and does not involve a partnership share. Defendants basically assert that they set off any debt to the original obligee. Due solely to the enforcement of the accounting rule, plaintiffs were barred from establishing that a debt was owed. However, the only complexity involved here is a determination of the amount of set-off. Plaintiffs should be free to assert their claim and prove a debt is owed and defendant may prove set-off in accordance with Ariz.R.Civ.P. 13(a), 16 A.R.S. The court may appoint a master if it determines that an accounting is necessary to sort out the evidentiary claims. Ariz.R.Civ.P. 53, 16 A.R.S.

As Judge Jacobson observed in his special concurrence in *Catron v. Watson,* "[t]he substance of the rule having been removed in Arizona, we should no longer be required to do worship to the empty form." 12 Ariz.App. 132, 136, 468 P.2d 399, 403 (1970). Given modern pleading rules, all legal and equitable claims may be joined in the same action. In addition, requiring a partner to bring an action for a formal accounting before suing to enforce a debt owed runs counter to the purposes of our rules of procedure. Under the appropriate circumstances, a formal accounting may be required to establish whether, in fact, a debt is owed, but this should be viewed as an evidentiary issue rather than an impairment of a right to maintain a cause of action in the first instance.

■ We find that the reasons for the accounting rule no longer apply in Arizona and, therefore, hold that the general accounting requirement as a condition precedent to an action at law between partners or a partner and the partnership is abolished.

*Conclusion*

■ Having abolished the accounting rule in Arizona, we turn to the disposition of this case. The trial court dismissed plaintiffs' suit on summary judgment because no accounting had taken place. As assignees of a partner's debt, plaintiffs were subject to all defenses that could be asserted against the partner. We have determined that the accounting requirement may no longer be raised as a defense. The trial court also determined that plaintiffs lacked standing to request an accounting because they did not acquire a partnership interest but only an assignment of the debt. Our determination of the continuing validity of the accounting rule moots the standing issue.

■ Plaintiffs request this Court to award attorney's fees on appeal in accordance with A.R.S. § 12–341.01 and *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 710 P.2d 1025 (1985). Because the claim presented to this Court would not have reached resolution without plaintiffs' appeal, and because plaintiffs' efforts result in a change in law that enables them, and others, to pursue their rights by adjudication or settlement, an award of attorney's fees on appeal is appropriate. We grant plaintiffs' request for an allowance of attorney's fees for review proceedings before this Court. The amount is to be determined in accordance with Ariz.R.Civ. App.P. 21(c), 17B A.R.S.

The decision of the court of appeals is vacated and the cause is remanded to the trial court for further proceedings consistent with this opinion.

3. As provided by § 29–221.

4. *Whenever other circumstances render it just and reasonable.*

A.R.S. § 29–222 (emphasis added).

FELDMAN, V.C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.